STANDARD ACCIDENT INSURANCE COMPANY *v.* ODILON CLOUTIER & a.

450

*Paul E. Nourie* (by brief and orally), for the plaintiff.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the defendants.

PAGE, J. The passengers, Auger and Daneault, worked for the Boston & Maine Railroad in Concord, and Odilon Cloutier was their foreman. All of the defendants lived in or near the village of Suncook. For five years prior to the accident the passengers had traveled to and from work nearly every work-day in Odilon Cloutier's car. The court found that "contributions either in the purchase of gasoline or otherwise were made," also that the "tender of varying amounts indicates that there existed at most a voluntary sharing of expenses, and not an understanding of a business character that the passengers were to pay for their transportation."

After this finding, the court summed up by saying, "On the state of the evidence the court cannot find that the probabilities favor the plaintiff in its contentions but at most are evenly balanced. The plaintiff having assumed the ordinary position of a plaintiff has im-

posed upon it the burden of proof, and this burden not having been sustained the petition must be and is dismissed and judgment is ordered for the defendants . . ." For reasons unnecessary to enlarge upon, the ruling was erroneous. The plaintiff did not waive the evidentiary rule of the burden of proof that was on the defendants and the defendants waived the procedural rule by permitting the plaintiff without objection or exception to go forward and have the closing, as a matter that made "little difference." *Travelers &c. Company* v. *Greenough*, 88 N. H. 391, 393; *Caswell* v. *Maplewood Garage*, 84 N. H. 241, 255; *Spilene* v. *Company*, 79 N. H. 326; *Chesley* v. *Chesley*, 37 N. H. 229; Wigmore Evidence, (3d *ed.*), *ss.* 2487, 2489. The understanding of the parties at the trial was not that the burden of the risk of non-persuasion shifted (*Hartford &c. Company* v. *Lougee*, 89 N. H. 222, 223), but that it did not matter who opened and closed. The evidentiary rule is not lightly to be invaded. *Raymond* v. *Company*, 86 N. H. 93, 96.

Since the ruling as to the burden of proof was erroneous, the defendants were met at every stage of the trial with the necessity of proving by the balance of the probabilities that Auger and Daneault were not carried for a consideration. They were bound by their own testimony on this issue. *Harlow* v. *Leclair*, 82 N. H. 506.

Their testimony puts it beyond question that Odilon Cloutier, the assured, had driven Auger and Daneault to and from work practically every day for a period of five years preceding the accident. All the four defendants denied their signed statements that Auger and Daneault had paid for their transportation sums ranging from fifty cents to a dollar a week on the average; they testified that they had never told the scrivener of the statements any such thing. Daneault even denied with some vehemence that he ever signed his statement, though his handwriting was satisfactorily proved and though one of his sons later testified that he saw him sign the statement.

While there was the strongest evidence that Daneault told an untruth, it was still possible for the trier of fact to find that he was merely mistaken or of unsound memory, and also that the scrivener of the statements lied or was mistaken when he swore to the facts in the statements as having been told to him by all the defendants; or he might have found that the defendants did not know what they signed. But it is by no means possible for the defendants to escape their testimony at the trial.

The insured testified that Auger and Daneault never paid him a

cent, and that he never asked for money. Auger and Daneault denied that they ever paid any money. Adopting this part of their stories, that would be enough to warrant a finding of coverage only on such a theory as that adopted in Ohio, that the word "consideration" as used in the policy, must be money paid in accordance with an agreement in advance, so that, as between friends, a sharing of expenses, as by paying for gasoline, cannot be consideration. *Beer* v. *Beer*, 134 Oh. St. 271; *Myers* v. *Corporation*, 99 Fed. (2d.) 485.

The defendants are firmly impaled on their further testimony as to contributions. Daneault testified freely that he bought gasoline for use while they were being conveyed. "I don't remember how often but every three or four weeks he [the insured] stopped to get gas; he always bought his own gas but when he stopped to buy gas I opened up the window and paid the fellow for the gas." Later Daneault fixed the periods between Cloutier's purchases paid for by him as two, three or four weeks. Auger testified that he, also, sometimes paid for the gasoline.

We can take judicial notice of the distance of Suncook from Concord, of the fact that about one gallon of gasoline would be consumed each day, at a cost of at least one dollar a week. If Daneault and Auger paid for the gasoline only, as they admitted, and no more, they would have their transportation at a cost of fifty or sixty cents a person per week, while it was in evidence that on the bus they would have had to pay seventy-five cents each a week, or more. Whatever gasoline they paid for, and there is no evidence that Cloutier paid for any purchased on these trips, was worth something to the insured in the lessened cost of his own transportation, if by no more than a dollar a week. While one can imagine a larger consideration than that, it was a sufficient consideration to support an agreement to carry. The test of coverage in such cases in this jurisdiction is not whether the consideration was large or small, but whether the amount contributed was the consideration for a contract of carriage rather than a voluntary contribution. The test applied in some jurisdictions that as between friends a sharing of the expenses of the trip cannot be a consideration within the meaning of the policy is altogether too narrow.

It is true that if there is "no more than an interchange of ordinary hospitalities among friends," that "would not sustain a finding of the existence of any business arrangement." *Lee* v. *Chamberlin*, 84 N. H. 182, 185. It is also true that where the incidents of contribution are only few and occasional, the trier of fact has comparatively

little to go on for a finding that there is a business arrangement. But Judge *Chestnut* has correctly pointed out that we may have consideration for carriage in the case of a single use, as well as in the case of habitual use. *Myers* v. *Corporation, supra.*

When, however, we have presented a case of habitual use over a long period, with mutual advantage to the insured and his passengers, the situation is altogether different. Cloutier has accepted, in the purchase of gas by his passengers with considerable regularity, a lessening of the cost of his own travel. Whether it be a dollar a week, or less or more, is not a decisive factor. Whatever it was, it was enough for a consideration for a business arrangement. *Maryland &c. Company* v. *Martin*, 88 N. H. 346, 349. It would be sufficient if it were so uncertain in amount as that represented by a promise "to fix it up." *Blanchette* v. *Sargent*, 87 N. H. 15. The thought expressed in *Ocean &c. Company* v. *Olson*, 87 Fed. (2d), 465, that nothing short of a definite mileage payment or net profit to the insured can be a consideration is not the law here.

One of the subsidiary findings was that the rather uncertain fifty cents to a dollar a week per person, claimed by the plaintiff to have been contributed, negatived the existence of an agreement to hire transportation. Comparative uncertainty may have some tendency in some cases to lead the trier of fact to doubt the business character of the transaction, but it is far from negativing that character. The insured could make a business arrangement for the private carriage of Auger and Daneault without collecting the fixed tariffs required in public service. He could make the amount small or uncertain in deference to friendship, smaller than he would for strangers, and still have a business arrangement. He could even, it seems, accept "whatever you want to give me from time to time" and to the extent that he thereby reduced his own cost of travel, that could amount to a consideration within the meaning of the policy.

Nor was it necessary that there be an expressed contract made in advance of the first carriage. The business arrangement could be implied from the conduct of the parties. A single or occasional contribution might, depending on the circumstances, afford some basis for an implied agreement. Whether or not the contribution was accepted reluctantly by the insured may have a bearing. *Reed* v. *Bloom*, 15 Fed. Supp. 600. The implication from contributions by the passengers over a period of two months may be completely rebutted by showing that the insured promised free transportation,

leaving as the only fair implication the one that the contributions were purely voluntary. *Yelin* v. *Casualty Co.*, 265 N. Y. 590. Of course we are not troubled here by the rule in some jurisdictions that policies are most strongly construed against the insurer. *Gardner* v. *Casualty Co.* 285 Mich. 80.

We are confronted by a clear course of conduct by the defendants for at least four years before the policy relied on was written, for five years before the accident. The course was that the passengers contributed, as the trial court found, "either in the purchase of gasoline or otherwise." The contributions, if not requested by the insured, were nevertheless accepted throughout a long period, and there is not the least evidence that the insured received them with the slightest reluctance, or that he ever promised to carry Auger and Daneault without any contributions. Though somewhat uncertain in amount, and though at intervals of two, three or four weeks, there was at least such regularity about them and such a degree of certainty that the insured would and did benefit from them, so that reasonable men must infer that the arrangement was not one of mere volunteering by the passengers and unhappy acquiescence by the insured, but was instead something that had ripened into an implied undertaking by the insured to carry the passengers on the day of the accident in consideration of their contributions.

The insured did not pay the plaintiff for coverage of the extra risks imposed by his regularly carrying Auger and Daneault. Upon any reasonable construction of the word "consideration" as used in the policy, their admitted contributions were a consideration for their carriage. If the contributions were less than the full proportional cost of their transportation and the insured was willing to carry his friends for a bargain price while he carried a low-cost policy, the policy itself does not warrant a construction that would cover low-cost transportation under a low-cost policy, any more than it would give coverage to high-cost transportation. Any such construction in the circumstances existing would place a premium upon regular wild-cat transportation at the expense of indemnity companies, and without the payment of suitable premiums. The exclusion of coverage was meant, at least, to give no benefits to passengers who have transportation in such a regular course of conduct as we have here, even though it does permit the insured the privilege of taking out friends occasionally, who now and then buy gasoline on a purely voluntary basis.

The request for a finding that there was no coverage should have been granted.

*Judgment for the plaintiff.*

BRANCH, J., did not sit: the others concurred.

Merrimack, }
June 1, 1943. } No. 3399.