Henry P. Johnson appeals from a summary judgment in favor of Allstate Insurance Company.
Johnson was president of a nonprofit corporation, Kiddie Kollege Day Care Center, Inc. ("Kiddie Kollege"), which operated a day care center for children in Birmingham. Sometime in 1980 or 1981, Kiddie Kollege started rendering a daily pick-up service to transport children to and from the day care center. Those parents who wanted their children to use this transportation service signed a form indicating this. Kiddie Kollege charged $1.00 each way for each child transported to and from the center. On September 10, 1984, a van transporting children enrolled in Kiddie Kollege was involved in an accident and several children were injured as a result. Kiddie Kollege had liability insurance with USF G that covered the children while in Kiddie Kollege's care, whether at the center or being transported in the van. The question involved in this action is whether Johnson has coverage under an Allstate policy.
Sometime in 1978 or 1979, Johnson as an individual obtained insurance for his personal vehicles through Allstate from its agent, Johnny Angry. In 1981, Kiddie Kollege obtained the use of the van involved in the accident. The title to the van was in the State of Alabama. Johnson added this van to his personal Allstate policy.
In a written statement given by Johnson four days after the accident, he said:
 "The 1977 Dodge was put on the policy [Johnson's personal policy with Allstate] in 1984. The 1981 Dodge van was put on the policy in 1981. When these vans were added to the policy agent Johnny Angry was not advised that they were going to be used for business purposes nor did he realize Day Care students were being transported in these vans to from home to the Center. I don't remember if my agent was aware two of the vehicles were owned by the State of Alabama. . . ."
In his deposition, Johnson testified that he did not recall if he ever told Angry the purpose or use to which he planned to put the van. Nor did he recall if he ever told Angry that a charge was being made for transporting children in it. Johnson did not inform Angry that title to the van was held by the State, not by Johnson personally, because that question never came up.
The contract of insurance issued by Allstate to Johnson (the "contract") contained various exclusions from coverage. Part I of the contract, pertaining to liability coverage, provides that Allstate will pay all damages a person insured is legally obligated to pay because of bodily injury or property damage. Specifically excluded from coverage is the following:
"This coverage does not apply to liability for
 "(1) your insured auto [which included the van involved in the accident] while used to carry persons or property for a charge, or any auto you are driving while available for hire by the public. This exclusion does not apply to *Page 364 shared expense car pools." (Emphasis added.)
Part VI provides protection against loss to the "auto," including collision, towing, and labor costs and rental reimbursement coverage. However, Part VI provided that these coverages do not apply to "any auto used for the transportation of people or property for a fee," and that "This exclusion does not apply to shared expense car pools."
Johnson filed a declaratory judgment action, alleging that a number of parents and guardians of the children involved in the accident had filed claims for injuries and expenses resulting from the accident; that the policy issued by Allstate provided liability coverage for personal injury and property damage and automobile collision coverage for the van; that Allstate refused to recognize Johnson's "coverage for either collision and or bodily injuries resulting from the accident." Johnson prayed for a judgment "declaring that the defendant [Allstate] has a duty to honor, defend, and satisfy any claims arising out of the accident mentioned herein to the extend [sic] of terms and conditions of the policy."
The complaint was amended to allege fraud. Johnson alleged that Allstate, through Angry, falsely represented that the van was "fully insured by the Defendant [Allstate] to the extent of the policy issued from the date of issuance" and that this representation was relied upon by Johnson in purchasing the policy. Johnson alleged that Allstate "still refuse[s] to honor valid claims presented by" him. The complaint as amended also alleged bad faith: "Allstate has failed and refused to abide by the terms and conditions of its contract and through its conduct has acted in bad faith in providing compensation for plaintiff's losses as agreed upon" in the contract.
On February 18, 1986, Allstate filed a motion for summary judgment. The motion was set for hearing on March 21, 1986. After oral argument on the motion and briefs had been filed in support of and in opposition to the motion, Johnson filed an affidavit. The affidavit flatly contradicted the written statement given by him to Allstate and generally contradicted his deposition testimony. The trial court refused to consider Johnson's affidavit to determine whether it created a genuine issue of material fact which would preclude summary judgment. Rule 56(c), Ala.R.Civ.P., provides that affidavits submitted in opposition to a motion for summary judgment shall be servedprior to the day of the hearing on the motion. Johnson had 30 days' notice of the hearing on the motion but did not serve his affidavit on Allstate until after the hearing. Consequently, it was within the circuit court's discretion not to consider the affidavit. Our standard of review is whether the trial court abused its discretion. See Real Coal, Inc. v. Thompson TractorCo., 379 So.2d 1249 (Ala. 1980); State v. Norman Tie LumberCo., 393 So.2d 1022 (Ala.Civ.App. 1981); 2 C. Lyons, AlabamaRules of Civil Procedure Annot., § 56.3, at 248 (2d ed. 1986). In the absence of a showing of excusable neglect, the trial court does not abuse its discretion when it refuses to accept out-of-time affidavits. Farina v. Mission Investment Trust,615 F.2d 1068, 1076 (5th Cir. 1980); Jones v. Menard,559 F.2d 1282, 1285 (5th Cir. 1977). There was no showing of excusable neglect.
The liability provision of Johnson's Allstate policy excluded liability for the insured auto "while used to carry persons or property for a charge," but the exclusion did not apply to "shared expense car pools."
The collision provision of Johnson's Allstate policy excluded coverage for "any auto used for the transportation of people or property for a fee," but that exclusion "does not apply to shared expense car pools."
The amended complaint alleged that Allstate provided liability coverage for bodily injuries and automobile collision coverage for the van and that Allstate refused to recognize such coverage.
A "car pool" is "a joint arrangement by a group of private automobile owners or drivers in which each in turn drives his car and *Page 365 
takes the other passengers." Webster's Third New International Dictionary, Unabridged (1971).
At the time of the accident made the basis of this complaint, the van which was covered under this policy was being used to transport children to and from Johnson's day care center for $1.00 each way. Is liability and collision coverage excluded because of this?
Any ambiguities in an insurance contract must be construed liberally in favor of the insured. United States Fidelity Guaranty Co. v. Baker, 24 Ala. App. 274, 134 So. 894, cert. denied 223 Ala. 172, 134 So. 896 (1931). A corollary to this rule is that exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. However, courts are not at liberty to rewrite policies to provide coverage not intended by the parties.Newman v. St. Paul Fire Marine Insurance Co., 456 So.2d 40,41 (Ala. 1984). In the absence of statutory provisions to the contrary, insurance companies have the right to limit their liability and write policies with narrow coverage. UnitedStates Fidelity Guaranty Co. v. Bonitz Insulation Co. ofAlabama, 424 So.2d 569, 573 (Ala. 1982). If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. Turner v. United States Fidelity Guaranty Co.,440 So.2d 1026, 1028 (Ala. 1983).
We have consistently held that coverage under an insurance policy cannot be enlarged by waiver or estoppel, since these doctrines can have a field of operation only when the subject matter is within the terms of the policy. Mooradian v. CanalInsurance Co., 272 Ala. 373, 379, 130 So.2d 915, 920 (1961). The reason behind this rule is that waiver and estoppel cannot operate to change the terms of a policy so as to cover additional matter. Hanover Fire Insurance Co. of New York v.Salter, 254 Ala. 500, 505, 49 So.2d 193, 197 (1950). We stated in Home Indemnity Co. v. Reed Equipment Co., 381 So.2d 45,50-51 (Ala. 1980):
 "Although the doctrine of waiver may extend to practically every ground on which an insurer may deny liability based on forfeiture, the doctrine is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom. . . ."
This policy has precluded the application of waiver or estoppel to exclusion clauses in insurance contracts in several Alabama cases. See, e.g., Home Indemnity Co. v. Reed EquipmentCo., 381 So.2d 45 (Ala. 1980); Inland Mutual Insurance Co. v.Hightower, 274 Ala. 52, 145 So.2d 422 (1962) (on rehearing).See also McGee v. Guardian Life Insurance Co., 472 So.2d 993
(Ala. 1985) (coverage provisions of an insurance contract are not subject to waiver; the fact that the insurer accepted the premiums does not make the insurer liable on the contract).
Allstate denied liability and collision coverage on the basis of exclusionary provisions in the contract, that exclude from coverage an insured automobile while used to carry persons or property for a "charge" or a "fee."
In construing exceptions to coverage of vehicles used to carry persons for a "fee" or a "charge," courts have enumerated various standards for determining whether a particular use of an automobile falls within the exclusion. Some jurisdictions, including Alabama, have stated that one of the determining factors is whether the occupants of the automobile are engaged in a cooperative enterprise to which the parties make contributions that are, to at least some degree, related to the expenses of the journey. In United States Fidelity GuarantyCo. v. Hearn, 233 Ala. 31, 170 So. 59 (1936), the insured made arrangements with friends to travel to the Rose Bowl in his car. The friends were to pay the expenses of the trip, including the insured's living expenses, 233 Ala. at 34,170 So. at 61. When in a cooperative enterprise for conveyance, some parties contribute to the expenses of the journey while another contributes his car and his personal *Page 366 
services in its operation to the others. This Court held that the parties were engaged in a common enterprise and that the insured's automobile was not being used within the exclusion of "carrying passengers for a consideration."
In Myers v. Ocean Accident Guarantee Corp., 99 F.2d 485
(4th Cir. 1938), the court stated that the test of liability of an insurance company under a clause excluding an automobile "carrying passengers for a consideration" turned on whether the amount paid by the passengers was only a proportionate part of the expenses of the journey or was a definite sum paid as consideration or profit to the driver and not directly related to the expenses of the trip. The court found two of the passengers on this journey, who were friends of the driver and who, along with the driver, contributed jointly to the expenses of the journey, did not fall within the scope of the exclusion. 99 F.2d at 490. However, the court held that the remaining three passengers, who were strangers to the driver and who paid the driver a set fee, did fall within the provision:
 "The payment that they made was not a proportionate contribution to the joint expenses of the whole party, but a definite sum for the transportation of themselves and their baggage alone and bore no definite relation to the actual costs of their carriage."
99 F.2d at 493. See also Eason v. Weaver, 557 F.2d 1202 (5th Cir. 1977) (construing Georgia law) (exclusion does not apply to "expense-splitting passenger" who contributed $5.00 to offset the cost of renting the car); Burgess v. Holder,362 Mich. 53, 106 N.W.2d 379 (1960) (exclusion "clearly covers a case where proofs show that the passengers paid a definite amount").
Other courts have looked at the totality of circumstances surrounding the journey and the amount paid to determine if a paying passenger falls within the exclusion. In State FarmMutual Automobile Insurance Co. v. Self, 93 F.2d 139, 140 (5th Cir. 1937), the court took into consideration the relationship of the parties; the existence, or lack, of a common interest; pleasure or benefit in making the journey; and the relationship of the amount paid to the actual cost of the journey. The court determined that the parties to the journey in question had no common interest other than procuring transportation to their several and different destinations. The set fee paid by the passengers was not fixed with reference to the actual expense of the trip, but was instead the motivating influence for the driver to provide the transportation. The court held the trial court should have granted the insurance company's motion for a directed verdict, and reversed and remanded the case. See alsoJeffry v. Allstate Insurance Co., 161 Me. 94, 207 A.2d 402
(1965) (construing Canadian law) (exclusion applied to passengers who paid driver a set fee for transportation with no significant regard to the expenses involved, who were not relatives or friends of the driver, and who had no common interest other than a desire to reach a common destination).
Some courts have looked at the nature of the contribution paid by the passenger. In Sleeper v. Massachusetts Bonding Insurance Co., 283 Mass. 511, 186 N.E. 778, 779 (1933), the court stated that whenever there is a contract for transportation between the driver and the passengers based on a valuable consideration, the insurer is not liable for damages under an insurance contract which excludes automobiles "carrying passengers for a consideration." The court also stated that the commercial adequacy or inadequacy of the consideration, or want of profit to the driver, is immaterial under the terms of the policy. 283 Mass. at 515,186 N.E. at 780. See also Eason v. Weaver, 557 F.2d 1202 (5th Cir. 1977) (construing Georgia law) (exclusion does not apply to passenger who was a friend of the insured and who made an "incidental, casual" contribution to the expenses of an undefined journey for the mutual pleasure of both); Standard Accident InsuranceCo. v. Cloutier, 92 N.H. 449, 32 A.2d 684 (1943) (exclusion applies where the amount contributed was consideration for the contract of carriage rather than a voluntary contribution). *Page 367 
Applying these standards to the case at hand, there is no question that the van which was being used to transport children daily to and from Kiddie Kollege was "carrying passengers for a fee" and "carry[ing] persons . . . for a charge" within the scope of the liability and collision exclusions of the contract. Those parents who wanted their children to be picked up by the van signed a contract with Kiddie Kollege. They paid the day care center $1.00 each way for each child for this service. If the parents got behind in their payments, Johnson would attempt to collect the amount due. Following the accident, Johnson terminated this transportation service. As a result, the day care center lost some children because there was no transportation. Johnson's deposition and the exhibit thereto establish that Kiddie Kollege provided a transportation service for its children under a contract for "a fee" or "a charge."
Johnson asserts that his deposition testimony creates a genuine issue of material fact as to whether the dollar received by Johnson for transporting students to and from the day care center was a "fee" or a "charge."
In his brief, Johnson asserts that the dollar per trip "was used to defray the expenses of operating the van." Johnson stated in his deposition that the amount collected for the transportation service was inadequate to support the operation of the van. Johnson's contention that the dollar per trip was a contribution rather than a fee rests upon his assertion that the dollar was primarily used to defray the cost of operating the van and was inadequate to support such operation.
These circumstances, however, are immaterial to the inquiry on the contract claim, and thus do not create a genuine issue of material fact precluding summary judgment. The actual use to which the amount collected by the driver was put, whether to defray expenses or otherwise, is not relevant to this appeal. Presumably, all the money collected by the drivers in the cases cited above was used to defray expenses. Nor is it important whether the driver makes a profit on the journey.
What is central to this appeal is whether the amount charged was a definite amount, whether it was proportionate to the actual expenses of the trip, whether it was voluntary or, rather, was paid as consideration to the driver, and whether the driver and passengers were engaged in a common enterprise. Johnson's deposition demonstrates that the dollar per trip was a definite amount unrelated to his actual expenses, paid as consideration for transporting students who were not engaged in a common enterprise with him. Under this evidence, there is no question that any claims arising out of this accident are excluded under the liability and collision coverages of the policy.
The automobile liability insurance policy at issue here clearly limits the risks covered by excluding from coverage vehicles which are used to transport paying passengers. Under Alabama law, insurers have the right to so limit their liability. Courts which have interpreted policies with similar exclusionary clauses have recognized this limitation on coverage by determining that, although the limitation does not apply to pleasure trips made by friends or relatives or to car pool situations where the amount collected by the driver is proportionate to the expense of the journey, the risks associated with vehicles used to carry paying passengers for a set fee do not come within the risks covered by such policies.
In this case, a van was used to provide a daily pick-up service for children enrolled at Kiddie Kollege. The children who were transported to and from the day care center were not friends or relatives engaged on an isolated pleasure trip and had no common interest other than reaching a common destination. The use of the van in this manner clearly expanded the risks of liability beyond those risks covered by the insurance policy. As a matter of law, a vehicle used to transport children to and from a day care center every day for a fee *Page 368 
or charge does not come within the coverage provided by the insurance policy at issue here. There is no genuine issue of material fact, and the trial court did not err in granting summary judgment in favor of Allstate on the contract count.
The occupants of the van at the time of the accident were made parties to Allstate's declaratory judgment action, which was consolidated with Johnson's declaratory judgment, fraud, and bad faith action against Allstate. The trial court granted summary judgment in favor of Allstate as to all issues raised in both lawsuits. Only Johnson appealed. Therefore, the issue of whether the occupants of the van were entitled to medical payments coverage under the Allstate policy is not before us.
There was no evidence that the van was not "fully insured by the Defendant [Allstate] to the extent of the policy issued from the date of issuance," which is the representation allegedly made by Allstate that is the basis of Johnson's fraud claim. In order to recover for fraud in Alabama a plaintiff must prove, among other things, that there was a false representation. P S Business, Inc. v. South Central BellTelephone Co., 466 So.2d 928 (Ala. 1985). Since there is no genuine issue of material fact as to this element of the action — it being clear that there was no false representation — the trial court did not err in granting summary judgment to Allstate on Johnson's fraud count.
There was a lawful basis for refusal to provide liability and collision coverage for the accident made the basis of this suit, and there was no evidence of an intentional failure to determine whether there was any lawful basis for the refusal to provide liability and collision coverage. Chavers v. NationalSecurity Fire Casualty Co., 405 So.2d 1 (Ala. 1981). Therefore, there is no genuine issue as to a material fact on Johnson's bad faith count, and the trial court did not err in granting summary judgment to Allstate on that count.
AFFIRMED.
TORBERT, C.J. and MADDOX, and BEATTY, JJ., concur.
ALMON, J., concurs in result.