**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,**
Plaintiff–Appellee,

v.

**Louis I. GONZALES, Rosa Janeski, Pauline Setmajer, et al.,**
Defendants–Appellants.

No. 95–1787.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1995.

Decided June 6, 1996.

Mark E. Schmidtke (argued), Lauren K. Kroeger, Hoeppner, Wagner & Evans, Valparaiso, IN, for Plaintiff–Appellee.

A. James Sarkisian, Merrillville, IN, for Gonzales.

Gregory J. Tonner (argued), Carl A. Greci, Spangler, Jennings & Dougherty, Merrillville, IN, for Setmajer and Warot.

Before WOOD, Jr., COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

On December 8, 1992 Louis Gonzales was returning home from work with four of his fellow employees when his vehicle was struck by an uninsured drunken driver, causing personal injury to Gonzales as well as his passengers. Gonzales's insurance carrier, General Accident Insurance Company, sought a declaratory judgment under the federal diversity statute, 28 U.S.C. § 1331,[1] seeking to establish that Gonzales's policy did not provide coverage for the accident. The district court granted summary judgment to the insurance company, reasoning that Gonzales was carrying passengers for a fee which was beyond the coverage of the policy. Gonzales and his four passengers appeal.

## I. Background

Gonzales was employed in a windshield wiper assembly factory in Michigan City, Indiana, approximately forty miles from his home in Merrillville, Indiana. In October 1990, he purchased a customized GMC mini van for his own personal use. Sometime thereafter, Gonzales began driving his van to work on a daily basis. About a month after the purchase of the mini van, Gonzales was approached by four of his co-employees who also lived in Merrillville, asking whether they could share the ride to work with Gonzales. Gonzales agreed and arranged to pick up the co-employees each weekday morning at a nearby parking lot, drive them to work, and return them to the same location in the evening. Each rider gave Gonzales $5 for the eighty-mile round-trip. The deposition testimony clearly reflects that the employees considered themselves car pooling.

The record makes clear that Gonzales was contacted by his fellow employees at the factory, and that he at no time either solicited nor advertised for passengers. The riders stated on deposition that not only was the arrangement convenient for them, but it was also a better deal for them than driving individually or taking the bus. However, on days that Gonzales did not go to work each one individually drove their own cars or took the bus. Gonzales's vehicle was insured under a personal automobile policy issued by General Accident. The policy provided the following exclusion:

A. We do not provide Liability coverage for any person:

. . . . .

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. *This exclusion (A.5.) does not apply to a share-the-expense car pool.*

The policy contained an identical exclusion in its coverage for uninsured motorists. However, the policy is silent on the issue of "share-the-expense car pool" and did not define the term "share-the-expense car pool."

Gonzales calculated that his weekly gas was "at least forty dollars," but stated that he never made any exact calculations as to his other expenses such as wear and tear and depreciation on the vehicle including tires, insurance, maintenance, oil and gas etc.

After the accident, it became clear that the driver of the other vehicle involved in the accident (who pled guilty to operating a motor vehicle while intoxicated causing serious bodily injury, an Indiana Class D felony) was uninsured and that Gonzales and his passengers had potential insurance claims against his insurance carrier General Accident. The insurance company in turn filed for declaratory judgment, claiming that coverage was excluded because Gonzales was transporting persons for a fee and that his arrangement did not fit within the parameters of a car pool arrangement as set forth in the policy.

1. General Accident Insurance · Company is a Pennsylvania corporation and Louis Gonzales and his passengers, Rosa Janeski, Pauline Setma- jer, James Warot, and Jordanka Sotiroski, are all citizens of the State of Indiana. The amount in controversy exceeds $50,000. 28 U.S.C. § 1332.

The district court agreed and granted summary judgment in favor of General Accident.

## II. Analysis

 We review summary judgment de novo. *Nucor v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 583 (7th Cir.1994). In this case, the insurance policy at issue excluded coverage if the insured carried persons for a fee; however, the policy provides an exception for a "share-the-expense car pool."

The two questions we must address are (1) whether Gonzales carried passengers for a fee, and if so, (2) whether Gonzales's conduct fell within the policy exception for "share-the-expense car pools."

Sitting in diversity, we apply the law of Indiana, attempting to predict how the Supreme Court of Indiana would decide the issues presented here. *Shirley v. Russell,* 69 F.3d 839, 843 (7th Cir.1995). The Indiana Supreme Court provides:

> If insurance policy language is clear and unambiguous, it should be given its plain and ordinary meaning. If there is an ambiguity, the policy should be interpreted most favorably to the insured. It should be construed to further the policy's basic purpose of indemnity.

*Tate v. Secura Insurance,* 587 N.E.2d 665, 668 (1992) (internal citations omitted). The rules of construction favor the insured because the insurance policies are generally drafted by the insurance companies. *Eli Lilly and Co. v. Home Ins. Co.,* 482 N.E.2d 467, 469 (Ind.1985). "Under Indiana law, an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language." *Fidelity and Guaranty Ins. v. Everett I. Brown Co.,* 25 F.3d 484, 486 (7th Cir.1994) (citing *Eli Lilly and Co.,* 482 N.E.2d at 470).

The Indiana Supreme Court has not had an occasion to interpret the exclusion at issue in Gonzales's insurance policy. In such situations, this court reads the decisions of the Court of Appeals of Indiana as providing strong indication of how it believes the Supreme Court would decide a similar question, unless there is a persuasive reason to believe otherwise. *See Indianapolis Airport v. American Airlines, Inc.,* 733 F.2d 1262, 1272 (7th Cir.1984); *Brooks v. Chicago Downs Ass'n, Inc.,* 791 F.2d 512, 514 (7th Cir.1986) ("Because the Illinois Supreme Court has never directly confronted the issue … we must take what they have said, what Illinois appellate courts have said, and then the decisions of other states on the same issue, in order to formulate our holding."). "Even when a state's intermediate appellate decisions are uniform, or at least reasonably so, we are not bound by them." *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.,* 972 F.2d 805, 814 (7th Cir.1992) (citing *Indiana Harbor Belt R.R. v. American Cyanamid Co.,* 916 F.2d 1174, 1176 (7th Cir.1990), *cert. denied,* 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 267 (1993)). However in such a case, we need a reason for predicting that the state's supreme court will reject the intermediate decisions. *Id.* (listing cases).

 As a threshold matter, with regard to evaluating whether Gonzales was carrying passengers for a fee, an Indiana appellate court has determined that the following four factors are relevant to the inquiry: (1) whether the amount charged is a definite amount; (2) whether it was proportionate to the actual expenses of the trip; (3) whether payment of the amount was voluntary or was paid as consideration to the driver; and (4) whether the driver and passengers were engaged in a common enterprise. *Meridian Mut. Ins. Co. v. Auto–Owners Ins.,* 659 N.E.2d 207, 211 (Ind.App.1995) (citing *Johnson v. Allstate Ins. Co.,* 505 So.2d 362, 367 (Ala.1987)); [2] *Martin v. Rivera,* 545 N.E.2d 32, 34 (Ind.App.1989).

Although reducing the Alabama case of *Johnson v. Allstate* to a four-factor test seems an over-simplification of the Alabama

---

2. *Meridian v. Auto–Owners* was decided after oral argument in Gonzales's case and was submitted to the court as supplemental authority under Rule 28(j) of the Federal Rules of Appellate Procedure. We note that the Supreme Court of Indiana granted transfer of *Meridian v. Auto–Owners,* 659 N.E.2d 207 (Ind.App.1995), on May 22, 1996 to review the decision of the Court of Appeals. *See* note 5, *infra.*

Supreme Court's analysis,[3] we are unable to determine any persuasive reason why the Indiana Supreme Court would not follow the law articulated by the Indiana Court of Appeals in *Meridian*. Thus, we will apply the four factors to Gonzales's situation to determine the initial inquiry of whether he was carrying passengers for a fee.

Turning to the first factor (requiring definite amount), it is clear that Gonzales asked for the five dollar fixed fee for the car pool arrangement. The Indiana Court of Appeals has held that in such situations: *"The use of a vehicle to shuttle passengers to and from the same destination on a daily basis for a fixed fee or charge falls within the exclusion [for carrying passengers for a fee]."* *Meridian*, 659 N.E.2d at 212. Indeed, at oral argument, Gonzales all but conceded that the arrangement was one of carrying passengers for a fee. We next address the issue of whether the exception for a "share-the-expense car pool" applies.

Having established that Gonzales was carrying passengers for a fee, the next question to be answered is whether or not Gonzales's arrangement with his fellow co-workers should be more properly classified as a "share-the-expense car pool" and thus be an exception to the exclusion denying coverage for carrying passengers for a fee. The district court found that the arrangement was *not* a shared expense car pool, relying again upon the four factors articulated in *Johnson*

and *Martin*. We are forced to disagree with the analysis, however, because we are of the opinion that the four factors are relevant only to the initial determination of whether Gonzales's arrangement was "for a fee" or not. The factors fail to address the ultimate question of whether a fee arrangement, once established, falls under the exception for car pools.[4]

The crux of this appeal, then, is whether the exception for "share-the-expense car pools" applies to Gonzales's arrangement. On this subject, the Indiana appellate court in *Meridian* notes:

> The typical "car pool" is an arrangement whereby drivers and vehicles are rotated without an exchange of money. *See Johnson*, 505 So.2d at 364–65. As in *Johnson* and *Martin*, in this case there was no rotation among different vehicles owned by people [travelling with the insured]. Rather, the [insured's] van was used exclusively, even when [the insured] herself was not riding. This does not meet the ordinary definition of a "car pool."

> ■ However, the critical feature of the phrase under consideration is that the term "car pools" is modified by the term "shared-expense." The plain meaning of "shared-expense car pool" is a ride sharing arrangement where the expenses are actually shared on a ratable basis.

> . . . . .

> Initially, any amount paid to compensate for travel, whether in a car pool or commercial transportation, reflects in some degree a portion of the cost of the journey and thus is "proportionate to the actual expenses of the trip." The third factor, voluntariness of the payment, is not helpful because the payment of money to a car pool driver is not "voluntary": it seems rather obvious that if a car pool rider did not "volunteer" his share of the expenses, he would not be part of the car pool. Thus, the "voluntariness" of a payment is not much help in distinguishing a car pool from a commercial transportation agreement. The other two factors (definite amount and common enterprise) similarly do little to distinguish a car pool from a more commercial type of transportation arrangement. Thus the four factors are applicable in determining whether a driver is "carrying passengers for a fee," but once that arrangement has been established the factors are not relevant to whether the car pool exception applies.

---

3. *Johnson* identified a number of factors that courts have traditionally evaluated to determine whether a particular arrangement constituted "carrying passengers for a fee," including the totality of the circumstances surrounding the journey and the relationship of the parties. The four factors identified by the Indiana Court of Appeals in *Martin* and followed in *Meridian* represent the factors summarized in *Johnson* as being important in *that particular factual circumstance*. *See Johnson*, 505 So.2d at 367 ("What is central *to this appeal* is whether the amount charged was a definite amount, whether it was proportionate to the actual expenses of the trip, whether it was voluntary, or, rather, was paid as consideration to the driver, and whether the driver and the passengers were engaged in a common enterprise.") (emphasis added).

4. An analysis of the four factors reveals that they are not helpful in distinguishing shared expense car pools from carrying passengers for a fee.

For the "shared expense" car pool exception to serve its purpose within the policy, the passengers must not merely contribute but must contribute in proportion to the expenses actually incurred. Absent a proportionate allocation of expenses among the passengers, the owner is merely carrying passengers for a fee. Here there is no evidence of expenses and, hence, no correlation between expenses and the amount paid by the passengers. *Meridian,* 659 N.E.2d at 213.[5]

It bears repeating that the Indiana Supreme Court construes ambiguous terms of an insurance policy exclusion against the insurer for the insurance company's experts have drafted the very specific language in the policy and that if reasonable persons can differ as to a phrase's meaning, the phrase is ambiguous. *See Phillips v. Lincoln Nat'l Life Ins. Co.,* 978 F.2d 302, 312 (7th Cir.1992) ("Insurance policies are almost always drafted by specialists employed by the insurer. In light of the drafters' experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand."). We are not of the opinion that a reasonable person's definition of a "car pool" is limited to *Meridian*'s requirement that cars be rotated and there be no exchange of money. As a New York court has stated:

> One definition of a "share-the-expense" car pool describes the situation wherein a number of travelers agree to calculate documented travel expenses to a mathematical certainty, and then apportion those expenses according to an agreed upon formula. This is not, however, the only reasonable interpretation of the term. Pursuant to the rules of construction applicable herein whereby the Court is charged with liberally construing ambiguous terms in favor of the insured, a "share-the-expense" car pool arrangement may encompass many varieties of less formal car pool arrangements.

*Aetna Cas. and Surety Co. v. Mevorah,* 149 Misc.2d 1011, 566 N.Y.S.2d 842, 845 (Sup.Ct.

1991). *See also American Heritage Dictionary* at (1982) (defining car pool as: "An arrangement whereby several commuters travel together in one car, sharing costs and often taking turns providing the car used."). Indeed, two of Gonzales's passengers specifically stated that they understood the arrangement to be a "car pool." (Setmajer Dep. at 14; Janeska Dep. at 5).

It seems inapposite that the policy exception for car pools, an essentially informal arrangement, requires such a level of formality in the calculation of expenses. If Gonzales had indeed operated his private vehicle as a business, keeping precise track of daily expenses, reflecting it in his tax returns and possibly even reporting it as a business endeavor with its benefits, and accounting for the fluctuating price of fuel, that seems to us the type of formal arrangement that was *not* intended by the policy exception for car pools. To the contrary, a precise formulation of expenses reflects a commercial endeavor and not a car pool arrangement initiated for convenience, efficiency, cost reduction and camaraderie. As passenger James Warot aptly put it when asked why he gave Gonzales five dollars for the ride: "If you ride with somebody somewhere, naturally you are going to give them something for the expenses I would think." (Warot Dep. at 8). Passenger Warot's comment points out the ambiguity in the exception. For example, suppose two men decide to go on a fishing trip. Instead of taking two cars, they used one. The passenger, we assume, would feel obligated to give the driver a portion of the expenses incurred for the transportation, not wanting to be a leech and take advantage of his colleague. This arrangement meets the Indiana appellate court's definition of carrying passengers for a fee. However, is it a car pool? We believe that a reasonable person, such as one of Gonzales's passengers, assumes that many informal arrangements such as the one described above are "car pools."

Further, it is clear from Gonzales's deposition that the van was for his personal use:

---

**5.** We again observe that the Indiana Supreme Court granted transfer of this case on May 22, 1996. Our final analysis will not be affected either way, for even if *Meridian* is held to be the law of the State of Indiana, Gonzales's case is distinguishable on its facts.

Q. Okay. What type of vehicle were you driving?

A. It was a GMC, a mini van.

Q. The van you were driving was not a full size commercial van?

A. It was a customized van. Mini van, that's what we call it.

Q. Was that your own personal vehicle?

A. It sure was.

Q. Was that van titled in your individual name?

A. Yes, sir.

Q. It was not titled in any business name?

A. No, sir.

Q. Okay. Was that van also your personal van that you would use for personal visits or personal business?

A. I don't understand what you're saying.

Q. Okay. Was that van, the white GMC mini van, was that your own personal van?

A. It was my van, yes, sir.

Q. Okay. So you would use that van just for your own personal use?

A. That's correct.

(Gonzales Dep. at 6–7).

It makes little sense to focus so intently on the precise calculation of expenses and require evidence of those expenses. But if we are to, then the charge must truly reflect the current price charged for gas, oil, maintenance, and insurance. Any paid arrangement for travel expenses is based upon the cost of the travel, whether car pool or commercial transportation. If Gonzales had taken the bus, his ticket price would be related to the cost of the commute; if he took a cab, the meter runs not only for each mile driven but also for all the time expended waiting during the conveyance. The risk incurred by Gonzales in travelling with his co-employees remains the same whether the calculations of gas and mileage are made to the penny or whether each passenger chips in five bucks for the ride to and from work; either way a group of co-employees are sharing part of the expenses and enjoying the convenience, fun, and camaraderie of travelling together to and from their place of employment.

Turning to Gonzales's fee, it is clear that his charge reflected a share of the expenses of the trip and certainly was not designed to cover all of his expenses, much less for profit. James Warot used to drive to the factory himself before joining Gonzales in his mini van. Warot was asked whether the five dollar cost was fair; he answered by comparing the expense it used to cost him to drive his own car to work:

> Well, the gas alone would be similar to that, plus the wear and tear on my car and all the miles you put on a car. You wear a car out driving back and forth to Michigan City every day. Your car gets close to one hundred thousand miles, it's shot. Plus your oil—your oil changes, your brakes. Hey it was a great deal. Sorry it's over.

Rough estimates also demonstrate that Gonzales's charge of five dollars per person per day did not exceed his actual expenses. Carrying five passengers a day, Gonzales received $125 total per week from the passengers. He estimated that his weekly gas bill was at least forty dollars, leaving but $85 per week for vehicle depreciation and maintenance costs, such as tires and cleaning. Considering that Gonzales drove 400 miles a week (a 40-mile round trip, five days a week), $85 certainly cannot be considered to actually cover the expenses borne by Gonzales.[6] Thus, each passengers' payment of five dollars daily represents a roughly fair

---

**6.** Gonzales purchased a 1990 GMC mini van in 1990. Driving 400 miles a week, Gonzales put at least 40,000 miles on his vehicle for the two years that he owned it. Assuming that the life of a car is approximately 100,000 miles, it is reasonable to approximate that the vehicle depreciated at least forty percent. Further assuming that the new car cost $15,000, the depreciation totals $6000. Spread over two years the depreciation equals fifty-eight dollars per week. Adding costs for upkeep (tires, brakes, emissions, inspections, oil etc.) to the fifty-eight dollar figure, it becomes clear that Gonzales's charge was in all probability not commensurate to his actual expenses and certainly not excessive. Obviously, the numbers for depreciation are hypothetical approximations, but it is fair to say that most car pool drivers do not engage in calculations any more complex or accurate. Gonzales's car pool, like many others, was informally arranged to share a part of the expenses of commuting to and from work.

share of the expenses. Indeed, the passengers testified that five dollars was "fair" and a "good deal," reflecting their own knowledge as commuters that the expenses were somewhat apportioned. Since Gonzales was planning to drive himself, it made sense for his co-employees to ride with him and contribute to a portion of his expenses. Indeed, it is interesting to note that the federal government, employers as well as local governmental units are encouraging employees to "car pool" in similar circumstances to reduce engine emissions and pollution, alleviate congested roadways, and save fuel and expenses for everyone.

Even accepting that *Meridian* represents Indiana law and requires "evidence of expenses" and some division of those expenses, Gonzales's situation is sufficiently distinct and removed from the factual circumstances in *Meridian* that we believe it proper to hold that Gonzales was involved in a "share-the-expense car pool" arrangement. First, Gonzales provided some evidence of his expense calculation, and both rough estimations and passenger testimony reflect that the five dollar charge at best only covered a portion of the expenses. By contrast in *Meridian*, the court stated that there was "no evidence of expenses." Second, if Gonzales could not drive, his co-employees took the bus to work or drove themselves. In contrast, the insured in *Meridian* allowed others to drive her van, with the substitute driver receiving a twelve dollar reduction in his fee, increasing the risk of accident and reflecting a more formal commercial business arrangement. Third, Gonzales took four to six co-employees in his personal mini van whereas in *Meridian*, the insured took up to eleven riders in her van, increasing the probability that the arrangement was made for profit. Fourth, Gonzales had been driving himself and his co-employees to work for about 18 months, but the driver in *Meridian* had driven for a set fee for "well over a decade." 659 N.E.2d at 211 n. 2.

Because it is, at least, ambiguous as to whether Gonzales's arrangement constituted a "share-the-expense car pool," we follow the Indiana Supreme Court's instruction that ambiguities are to be resolved in favor of the insured. If the insurance company had wanted a narrow definition of "car pool" it could and would have delineated it clearly in the policy. *See Heller v. Equitable Life Assur. Soc.*, 833 F.2d 1253, 1257 (7th Cir.1987) (refusing to enlarge the terms of coverage to require an insured to undergo carpal tunnel surgery as a condition to receiving disability payments). Thus, we are convinced that Gonzales's arrangement should be properly delineated to be nothing but a "share-the-expense car pool" type of arrangement: thus an exception to the policy exclusion against carrying persons for a fee. Gonzales is entitled to summary judgment as a matter of law.

## III. Conclusion

The decision of the district court is

REVERSED.