This appeal presents two issues: 1) Whether the trial court abused its discretion by refusing to consider expert testimony filed on the date of a summary judgment hearing as opposed to being filed prior to the day of hearing, pursuant to Rule 56(c), A.R.Civ.P., where the trial court granted the plaintiff's earlier request for a continuance because his original counsel had withdrawn from the case, and where the plaintiff had employed new counsel two days before the hearing; and 2) whether the lack of "informed consent" is excused, as a matter of law, in the context of a medical malpractice claim by a plaintiff who has been involuntarily civilly committed to a mental health facility and whose condition has been diagnosed as manic depressive. We reverse and remand.
The complaint alleges that the plaintiff suffered permanent physical injury (a pseudo-Parkinsonian disease known as "tardive lingual and oralfacial dyskinesias"), resulting from the prescription for and administration to him of two drugs. The plaintiff was confined in the North Alabama Regional Hospital on two separate occasions. On the first occasion he was attended by defendant Dr. Mark Peterson, who prescribed the drug Prolixin Decanoate, and on the second occasion by defendant Dr. John Wicks, who prescribed Mellaril. In the summary judgment posture of the case, it is conceded that the plaintiff's physical condition is consistent with a known potential side effect of these two drugs. Further, the defendants do not contend, in their affidavits supporting the motion for summary judgment, that the applicable standard of care relieved them from obtaining the patient's "informed consent," but that they did in fact inform Nolen of the potential risks.
The defendants' motions for summary judgment were granted on two separate grounds: 1) That the plaintiff's counter-affidavits were untimely filed (being filed on the day of the hearing and not at least one day before the hearing); and, 2) that, as a matter of law, the plaintiff is not entitled to maintain a medical malpractice claim based on the "informed consent" doctrine in the context of his involuntary commitment to a mental health facility pursuant to a civil proceeding.
Because Nolen must prevail on the procedural issue (whether his affidavits in opposition *Page 865 
to the motions for summary judgment were timely filed), or else the substantive "informed consent" issue will be declared moot, we first address the "timely filing" issue. A detailed sequence of events will be helpful:
 June 17, 1985 — Nolen's complaint filed by his first lawyer in Jefferson County.
 October 10, 1985 — Defendant drug company's motion to dismiss granted
May 1986 — Nolen's first lawyer withdraws
 June 12, 1986 — Remaining defendants' motions to transfer to Morgan County granted
 May 1986 to November 1986 — Nolen fails to obtain new lawyer
November 1986 — Nolen hires new lawyer
April 1987 — Second lawyer withdraws
 April 1987 to December 8, 1987 — Nolen fails to obtain new lawyer
 August 18, 1987 — case set for trial, but continued on Nolen's request for time to retain lawyer
 November 18, 1987 — defendants file motions for summary judgment
 November 20, 1987 — defendant Peterson supplements motion for summary judgment
 November 24, 1987 — defendant Wicks supplements motion for summary judgment
 November 30, 1987 — case set for trial, but continued at Nolen's request
 December 1, 1987 — all parties given notice of hearing on summary judgment motions set for December 10
December 8, 1987 — Nolen retains present lawyer
 December 10, 1987 — Immediately before hearing, Nolen serves motion for continuance and affidavits in response to motions for summary judgment. Following hearing, motions for summary judgment granted.
The pertinent portions of the December 10 hearing transcript read as follows:
 "MR. TRAWICK: Your Honor, I represent Dr. Wicks, and we would request that the court exclude the affidavit of Dr. Wilkerson filed by the plaintiff as not being timely filed in compliance with Rule 56. It was not filed the day before the hearing; it was filed the day of the hearing. It should not be considered by the court.
 "MR. BROOM: We would also join in that motion on behalf of Dr. Peterson.
". . . .
 "MR. KNIGHT: Judge, in view of that, I would call the court's attention to Rule 1 of the Alabama Rules of Civil Procedure, and would point out that the rules . . . were enacted for purposes of any party litigant being given his day in court, that the case be tried on the merits, and that it not be bounced out of court on technicalities. And in view of that objection they are raising, we would move to continue the motions for summary judgment in order to cure that technical objection based on tardiness.
 "THE COURT: I am not going to continue this case. . . . Any other arguments?
 [At this point, arguments were made by all parties regarding the issues of 1) informed consent; and, 2) immunity of the defendant doctors as state employees.]
 "THE COURT: I am having a little trouble with that rule of informed consent, applying that rule to an involuntary commitment of a person who is mentally ill. I don't see how in the world a treating psychiatrist could be held to such a rule as that, and I don't believe they are. I am going to grant the motions for summary judgment on the two theories, one on Rule 56 and the other on the issue of informed consent, in that there is no requirement for an informed consent in an involuntary commitment proceeding."
The defendants rely heavily upon our case of Johnson v.Allstate Ins. Co., 505 So.2d 362 (Ala. 1987), and the Fifth Circuit Court of Appeals case of Farina v. Mission Inv. Trust,615 F.2d 1068 (5th Cir. 1980), for the proposition that the trial court's exercise of discretion in disallowing untimely filed Rule 56(c) affidavits will be reversed only for abuse of discretion. We agree that this is the appropriate standard *Page 866 
of review. Our review, pursuant to that standard, however, is influenced by the spirit of Rule 1's admonition in favor of an adjudication on the merits of every case. Just as in the case of a default judgment pursuant to Rule 55, a discretionary summary judgment that ends the litigation in favor of the defendant, because of the plaintiff's failure of strict compliance with Rule 56(c), must be reviewed in light of the totality of the circumstances of each case.
When so reviewed, we find here a set of circumstances materially different from those in Johnson and Farina. The reports of those earlier cases (including the case of State v.Norman Tie Lumber Co., 393 So.2d 1022 (Ala.Civ.App. 1981), fail to disclose any factual basis for a Rule 6(b) "excusable neglect" finding. Here, Nolen's "retention of a lawyer" problem began when his Birmingham lawyer apparently lost interest in pursuing the litigation upon the transfer of the case from Jefferson to Morgan County. His second Birmingham lawyer withdrew after about five months, all of which happened more than seven months before the defendants filed their motions for summary judgment.
Although the case was set for trial on November 30, 1987, and the record reflects that it was continued at Nolen's request, the record also reflects that the defendants' motions for summary judgment (last supplemented on November 24) were pending and awaiting disposition. Indeed, the following day (December 1), the trial court, obviously recognizing that the November 30 trial date was premature, scheduled a hearing on the summary judgment motions for December 10.
From this point forward, any lack of diligence with respect to the filing of appropriate responses to the pending summary judgment motions must fall upon Nolen personally for his failure to retain counsel earlier than December 8, and not upon Nolen's newly employed counsel. With only one full day between his employment date and the date of the hearing, Nolen's lawyer prepared a motion for a continuance, an affidavit by Nolen, and an affidavit by Nolen's personal physician for filing and serving before 9:00 a.m. on the date of the summary judgment hearing. Under the totality of these circumstances, we are not prepared to conclude, as a matter of law, that Nolen's delay in retaining counsel is so inexcusable as to justify the action of the trial court in refusing to accept and consider the affidavits offered by Nolen in opposition to the motions for summary judgment.
Moreover, the motion for a one-day continuance (so as to comply with the "prior to the hearing" language of Rule 56(c)), absent the trial court's willingness to accept the plaintiff's affidavits on December 10, should have been granted, as a matter of law. When the trial court, acting on December 1, scheduled a summary judgment hearing for December 10, thisnotice period fell one day short of the ten-day requirement of Rule 56(c). Hightower Co. v. United States Fidelity Guaranty Co., 527 So.2d 698 (Ala. 1988). Thus, the trial court could have cured this defect either by accepting and considering the affidavits as filed on December 10, or by granting the requested one-day continuance. Failing to accept either option, the trial judge abused his discretion. Furthermore, considering the nature of the evidence contained in the proffered affidavits, we find that no undue prejudice would result to the defendants.
Whether that error requires reversal depends upon our answer to the substantive "informed consent" issue: Whether the trial court erred in entering summary judgment in favor of the defendants in light of the plaintiff's affidavits in opposition to the summary judgment motions. The argument section of each of the appellees' briefs relating to this issue consists of a single paragraph. We quote from Dr. Wicks's brief:
 "The probate court specifically orders the Department to provide treatment to the involuntarily civilly committed patient for his mental illness. The Appellant argues that, even though he was properly committed to the Department for treatment of his mental illness, he nonetheless has the right to refuse the treatment from the Department that is *Page 867 
required by the Court Order. The argument of the Appellant has no basis in logic, common sense, or the law in Alabama. The Appellee submits that the argument of the Appellant cannot be sustained by the record before this Honorable Court."
We quote now from Dr. Peterson's brief:
 "Defendant Peterson contends that the trial judge was correct in his application of Alabama law regarding the involuntary commitment of mental patients and their subsequent treatment. Defendant Peterson joins in and adopts by reference the arguments of co-appellee John C. Wicks regarding this issue. This defendant would state, however, that said issue is properly superseded by the trial court's refusal to consider the untimely affidavits filed by the plaintiff in this case."
We set out the full content of the defendants' arguments on the "informed consent" issue to demonstrate that we have been cited to no case, and our independent research has disclosed none, that support the proposition that, absent a finding of incompetency of the patient or an emergency situation, the involuntary commitment to a mental institution necessarily and as a matter of law excuses medical practices and procedures below the standard recognized and accepted by the medical community. To the contrary, several cases have addressed the issue; and, without exception, every case has repeated the proposition that a person involuntarily committed to a mental hospital is not ipso facto barred from the invocation of the "informed consent" doctrine.
Federal Courts of Appeals have held unequivocally that a mental patient confined involuntarily to a mental facility maintains a constitutionally protected right to reject potentially harmful antipsychotic medications. Project Releasev. Prevost, 722 F.2d 960 (2d Cir. 1983); Rennie v. Klein,720 F.2d 266 (3d Cir. 1983); and Bee v. Greaves, 744 F.2d 1387
(10th Cir. 1984). See, also, Johnson v. Silvers, 742 F.2d 823
(4th Cir. 1984).
State courts have treated this issue in the context of voluntary as well as involuntary commitments and in the context of statutory regulations promulgating guidelines for such treatment. For example, see People v. Medina, 705 P.2d 961
(Colo. 1985); Aiken v. Clary, 396 S.W.2d 668 (Mo. 1965); In theMatter of Guardianship of Roe, 383 Mass. 415, 421 N.E.2d 40
(1981); and, Rogers v. Commissioner of the Department of MentalHealth, 390 Mass. 489, 458 N.E.2d 308 (1983).
Absent any such statutory guidelines in Alabama, the standard of conduct incumbent upon the medical practitioner is determined by the esoteric considerations established and adhered to by the medical community. The principles set forth in Fain v. Smith, 479 So.2d 1150 (Ala. 1985), and Otwell v.Bryant, 497 So.2d 111 (Ala. 1986), are sufficient to govern the trial of the cause on remand.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.