Burroughs sued Jackson National Life Insurance Company and its agent, Robert O. Curtis, alleging fraudulent misrepresentation regarding a Jackson National product known as "Enhanced Ultimate," which Burroughs claims he was induced to purchase. Burroughs appeals from a summary judgment for Jackson National and Curtis.
Burroughs alleged that Curtis, an agent of Jackson National, told him that "he could 'get his money out' when he wanted to, though the policy had no cash value for the first two years." He testified in his deposition that he thought the "Enhanced Ultimate" product sounded "too good to be true"; and, therefore, that he took the documents to his accountant, Michael O. Tidmore. Burroughs stated in his deposition that he would not have bought the product if Tidmore had not said that it was "on the up and up."
Jackson National moved for a summary judgment, claiming that Burroughs had not relied on the alleged misrepresentation. Jackson National argued that Burroughs's ultimate reliance on Tidmore's opinion barred Burroughs's claim of fraud.
A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. In reviewing a summary judgment, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts against the movant.Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256
(Ala. 1991). The present action was filed in May 1988; therefore, the applicable standard of review is the "substantial evidence rule." See § 12-21-12, Ala. Code 1975. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). "In determining whether there is substantial evidence to defeat a summary judgment motion, this Court reviews the record in the light most favorable to the nonmovant and resolves all reasonable doubts against the movant." Specialty Container Mfg., Inc. v. Rusken Packaging,Inc., 572 So.2d 403, 404 (Ala. 1990).
In his brief to this Court, Burroughs alleges several instances of misrepresentation; however, his deposition testimony clearly limited his claim to the alleged misrepresentation that he could get back his "investment" of $10,000, less a small amount, at any time after the money was invested. Therefore, we will limit our opinion to addressing the issue of whether Burroughs presented sufficient evidence to show a question of material fact regarding this alleged misrepresentation.
In his deposition, Burroughs testified that Curtis had "told me I could get my money back, which I can't do." Burroughs testified that at the time Curtis allegedly misrepresented the "Enhanced Ultimate" policy to him, Burroughs received several documents describing the product. One of the documents, entitled "Creating the Non-taxable Dollar," contains a subsection, "Long-term Benefits." That section contains the following description of the product: *Page 1331 
 "Five years from now, what has the Enhanced Ultimate done for your client? At an annual cost of $212, over a 5-year period he's paid just $1,060. The net cash surrender value at that point, if he fully surrendered the policy, would be $32,459. That amount would be absolutely tax-free. Remember, the IRS considers the cost basis of life insurance policy, for tax purposes, as the gross premium minus the cash surrender value plus any outstanding policy loans.
 "In our illustration the gross premium is $50,000 ($10,000 a year for five years). The cash surrender value is $32,459 and the policyholder has received $2,587 on the zero-cost loans in each of the first five years or $12,935. That totals $45,394 which is less than the $50,000 cost which the IRS would use. Consequently he ends up, over this five-year period, with a total of $45,394 absolutely tax-free.
 "But is the $50,000 what I was, as the corporation owner, really paid? No. If I take one dollar out of my right hand pocket (the corporate pocket) and I put it in my left hand pocket (the personal pocket) and I take a deduction on it, I haven't lost the value of that dollar.
 "If you look at the second column on the illustration (Corporate Cost After Taxes), what your client really paid as the corporation owner is only $6,600 per year, or only $33,000 over five years and, again, he ends up with a total of $45,394 absolutely tax-free. If you take the difference between those two ($12,394) and divide that by the corporate after-tax cost of $33,000, you end up with a 38% return.
 "Actually, we never promised a return at all, did we? We said that we could show you a way of helping your client to pull money out of the corporation, on a legitimate, discriminatory, tax-deductible basis and put it in his pocket virtually without cost. And that's exactly what we just did. Jackson National's Enhanced Ultimate is the perfect philosopher's stone for a modern financial planner. It can turn a lead taxable dollar into a golden non-taxable dollar. Only Enhanced Ultimate, with its zero-cost loan provisions and the significant amount of tax-free money that can come out annually via the policy loan, is so uniquely suited for this type of tax planning."
Burroughs testified that Curtis explained the chart accompanying this document, which showed that the policy had no "cash surrender value" at the end of the first year, but had $9,700 in an "accumulation account." The accumulation account, as explained in the document, was the amount upon which Jackson National would pay interest.
Burroughs also testified that the policy or investment sounded "too good to be true" and that he asked Curtis to meet with his accountant, Tidmore, because Burroughs "wanted to make sure [the Enhanced Ultimate policy] was on the up-and-up." Burroughs testified that he set up the meeting with Tidmore and that Tidmore told him that the policy was "on the up-and-up." Burroughs testified that he made the decision to invest in the product, and, when asked whether he was relying on "what Tidmore [had] told [him] when he made his decision," he replied, "I'm sure that had a bearing on it." He also stated that he "certainly wouldn't have bought" the policy if Tidmore had told him he did not like the way the policy looked.
Tidmore, in an untimely affidavit that was considered by the trial court,[1] stated:
 "In the spring of 1987, I attended a meeting at my office with John Burroughs and Robert Curtis. This meeting began with Curtis talking about insurance and showing John Burroughs and myself a highlighted brochure of some product. . . . I did not look at the brochure in detail. I did not see a policy that pertained to this product. . . .
 "I did not endorse or approve any policy of insurance because I was not asked to do so." *Page 1332 
Although Burroughs does not clearly state in his deposition what exactly he was told regarding his ability to get back his "investment," we will assume, for purposes of this appeal only, that he was told by Curtis that he could get some portion of his "investment" returned within the first year, when the policy had no cash surrender value. The question, then, presented by this appeal is whether Burroughs presented substantial evidence that he justifiably relied upon this alleged misrepresentation in purchasing the "Enhanced Ultimate" policy.
Restatement (Second) of Torts § 547 (1965), states the generally accepted common-law rule:
 "(1) Except as stated in Subsection (2), the maker of a fraudulent misrepresentation is not liable to another whose decision to engage in the transaction that the representation was intended to induce is not caused by his belief in the truth of the representation but is the result of an independent investigation made by him.
 "(2) The fact that the recipient of a fraudulent misrepresentation is relying upon his own investigation does not relieve the maker from liability if he by false statements or otherwise intentionally prevents the investigation from being effective."
This rule has also been stated as:
 "[T]he representee will not be prevented from availing himself of false representations unless he makes an investigation on his own account and it is of such character as to acquaint him fully with the essential facts. If the representee makes an investigation, however, that is free and unhampered, and he learns the truth, or conditions are such that he must obtain the information he desires, or if the facts he seeks to know are as obvious to him as to the representor, and their means of knowledge are equal, he is presumed to rely on his own investigation, and not on the representation. In such case he cannot be misled by the representor."
37 Am.Jur.2d Fraud and Deceit § 230 (1968).
The standard under which we examine Burroughs's reliance is the standard of justifiable reliance, first adopted inHickox v. Stover, 551 So.2d 259 (Ala. 1989). That standard is as follows:
 "A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is 'one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.' "
551 So.2d at 263. When the plaintiff brings in an expert, in this case an accountant, the particular facts regarding the plaintiff's knowledge, understanding, and ability to comprehend change significantly. The knowledge and understanding of the plaintiff's expert are attributed to the plaintiff. Given the facts of this case and the knowledge and understanding of Burroughs and his accountant, Tidmore, Burroughs's burden of presenting substantial evidence to establish an issue of fact as to justifiable reliance increases significantly.
In this case, there is no dispute that the documents given to Burroughs before he signed the insurance contract with Jackson National are accurate and contain no misrepresentation. Further, it is not disputed that Burroughs investigated this policy to the extent that he had his accountant, Tidmore, meet with Curtis. The brochures and the detailed charts included therein that describe the "Enhanced Ultimate" policy clearly show that the policy had no cash value at the end of the first year; in other words, these documents showed that Burroughs could not get back his "investment" until the policy had accumulated a sufficient cash surrender value.[2]
Tidmore's statement reveals that he recognized that "Enhanced Ultimate" was a life insurance policy. Burroughs testified *Page 1333 
in his deposition that Curtis explained the chart that showed that the policy had no cash value at the end of the first year. Based upon Burroughs's testimony that he made his own investigation of the policy before he invested his money and based upon the documents he received before he purchased his policy, we hold that Burroughs failed to produce substantial evidence that he justifiably relied upon Curtis's alleged statement that he could get a substantial portion of his investment returned to him at any time after the policy was issued. His claim of reliance directly contradicts the information available to him.
Therefore, we affirm the defendants' summary judgment.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX, J., concurs specially.
ALMON, J., concurs in the result.
[1] This Court has held that the trial court, in its discretion, can consider affidavits that are untimely filed. Nolen v.Peterson, 544 So.2d 863 (Ala. 1989).
[2] The "Enhanced Ultimate" policy, as described above, did provide that the policyholder could take out an interest-free loan each policy year, including the first year.