OPINION OF THE COURT
Marvin E. Segal, J.
By demand dated July 26, 1990, the respondent, Rhoda *1012 Mevorah, served the petitioner, Aetna Casualty and Surety Company, with a demand for arbitration with reference to an insurance policy providing uninsured motorist benefits. Said demand alleges that said respondent was injured in an accident on September 28, 1989, resulting in multiple, serious injuries to her body. Said demand further alleges that the offending vehicle’s insurance company disclaims coverage. By notice of petition to stay arbitration dated August 15, 1990, the petitioner moved for an order permanently staying arbitration on the ground that said respondent failed to submit proof that the alleged offending vehicle was uninsured. Petitioner moved in the alternative for an order adding the owner and insurer of the alleged offending vehicle as additional respondents, and directing that a hearing be held to determine the validity of the disclaimer by the alleged offending vehicle’s insurer.
By order dated October 4, 1990, the owner of the alleged offending vehicle, Norma Crummey, and the insurer of the vehicle, Liberty Mutual Insurance Company, were joined as additional respondents in the proceeding, and a temporary stay of arbitration was granted pending a hearing on the issue of whether the vehicle owned by Norma Crummey was the subject of a policy of insurance affording coverage to the respondent, Rhoda Mevorah. A hearing was conducted on February 4, 1991. Counsel for the petitioner was present at the hearing, as was counsel for each of the three respondents. At the conclusion of the hearing, the court reserved decision.
Based upon all the proceedings had herein, the court makes the following findings of fact: Norma Crummey purchased a new 15-seat van, vehicle identification No. 2B5WB31W4FK209704 in 1985. In 1987, she began to utilize the van to transport herself and some friends to work in Manhattan. Mrs. Crummey characterized the arrangement as a "car pool”. She testified that her friends agreed to pay $3 each trip. No details were elicited at trial as to the manner in which Mrs. Crummey and her friends arrived at the designated sum. As of September 1989, Mrs. Crummey, several friends with whom she had social relationships, and a number of "nonfriends” traveled to work on a daily basis in Mrs. Crummey’s van. The "nonfriends” apparently became riders through an acquaintance with someone already using the van to travel to work.
The van, usually driven by Mrs. Crummey’s husband, would make four trips each day; Mrs. Crummey’s friends were *1013 picked up at Pennsylvania Avenue and Linden Boulevard, in Brooklyn, New York, and the “nonfriends” were picked up in Howard Beach. Each passenger paid $3 cash for the ride into Manhattan. Mr. Crummey returned home with the van and later picked the passengers up in Manhattan and drove them home, again charging each $3 for the return trip. The same group of approximately eight passengers utilized the van on a regular, daily basis. The respondent, Rhoda Mevorah, traveled to work in the van for a period of two years, prior to September 1989, on a daily basis. Another witness, Bonnie Weiner, rode to work in the van for IV2 years, on a daily basis, prior to September 1989. On two occasions, Mr. Donovan Ogilivie drove the van, without remuneration, as a favor to Mrs. Crummey’s husband, who had asked for his help in driving some friends to work.
Mrs. Crummey did not provide the passengers with receipts for the $3 payment. She did not provide the passengers with any information regarding the cost of gas, tolls, insurance or other expenses incident to the operation of the van. The riders did, however, contribute toward an increase in the cost of tolls. Mrs. Crummey testified that she made no profit transporting her friends and the “nonfriends” to work.
On or about January 19, 1988, Mrs. Crummey executed a New York automobile insurance plan application for a private passenger vehicle through Phoenix “A Betta” Insurance Brokerage, whereby she sought insurance coverage for the van herein, for use as a pleasure vehicle. The additional respondent, Liberty Mutual Insurance Company, was designated to issue a policy of insurance on the vehicle through the assigned risk plan. A policy of insurance was issued by Liberty Mutual for the period January 28, 1988 through January 28, 1989, and was renewed for the period January 28, 1989 through January 28, 1990.
The respondent, Mevorah, commenced an action alleging that she sustained serious multiple injuries as a passenger in Mrs. Crummey’s van on September 28, 1989. By letter dated May 23, 1990, Liberty Mutual notified Mrs. Crummey, and counsel for Rhoda Mevorah, in writing, that it was denying coverage under the policy of insurance on the basis that “exclusion 5” of the policy provides no coverage for liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee.
As set forth hereinabove, based upon this denial of coverage *1014 by Liberty Mutual, Rhoda Mevorah served a demand for arbitration under the uninsured motorist provision of her own insurance policy issued by petitioner, Aetna Casualty and Surety Company. Norma Crummey joins the petitioner in seeking a permanent stay of arbitration on the basis that the denial of coverage by Liberty Mutual, based upon the aforesaid exclusion, is invalid. Both parties contend that the denial of coverage based on "exclusion 5” is invalid on the following grounds: (1) Liberty Mutual failed to prove that it gave reasonable notice of disclaimer pursuant to Insurance Law § 3420; (2) Mrs. Crummey’s use of the van can be reasonably defined as a car pool; (3) public policy which encourages car pooling mandates an expansive definition of the term car pool; (4) the exclusion asserted by Liberty Mutual fails to provide coverage mandated by applicable law, which excepts from the definition of "private automobile” only those vehicles used as public or livery conveyances.
CONCLUSIONS OF LAW
The ipsurer bears the burden of establishing the validity of the exclusion upon which it bases a denial of coverage under a policy of insurance. (Seaboard Sur. Co. v Gillette Co., 64 NY2d 304; Facet Indus. v Wright, 62 NY2d 769; Insurance Co. v Chinoise Rest. & Trading Corp., 85 AD2d 712; American Fid. Fire Ins. Co. v Pardo, 32 AD2d 536; American Sur. Co. v National Fire Ins. Co., 25 AD2d 734.) Any exclusion or exception from insurance policy coverage must be specific and clear in order to be enforced. Exclusions or exceptions are not to be extended by interpretation or implication, but are to be accorded strict and narrow construction. (Seaboard Sur. Co. v Gillette Co., supra; Utica Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co., 103 AD2d 60, affd 64 NY2d 1049; National Grange Mut. Ins. Co. v Continental Cas. Ins. Co., 650 F Supp 1404; Board of Educ. v CNA Ins. Co., 647 F Supp 1495, affd 839 F2d 14.) When relying on an exclusionary clause, an insurer must show not only that its interpretation of the clause is reasonable, but that the clause cannot be reasonably interpreted in any other way. (Fagnani v American Home Assur. Co., 101 AD2d 803, revd 64 NY2d 967; American Home Assur. Co. v Port Auth., 66 AD2d 269; Budofsky v Hartford Ins. Co., 147 Misc 2d 691.) While the court should not strain to find ambiguity where the words of an exclusionary clause are definite and precise (Pergament Distribs. v Old Republic Ins. Co., 128 AD2d 760, lv denied 70 NY2d 607; Farmers Fire Ins. *1015 Co. v Kingsbury, 105 AD2d 519, lv denied 64 NY2d 607; Acorn Ponds v Hartford Ins. Co., 105 AD2d 723), where an ambiguity exists it must be resolved in favor of the insured to the end that coverage is afforded to the full extent that any fair interpretation will allow. (United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229; Ruder & Finn v Seaboard Sur. Co., 52 NY2d 663, rearg denied 54 NY2d 753; Breed v Insurance Co., 46 NY2d 351, rearg denied 46 NY2d 940; Matter of Vanguard Ins. Co. [PolchlopekJ 18 NY2d 376; Venigalla v Penn Mut. Ins. Co., 130 AD2d 974, lv dismissed 70 NY2d 747; Atlantic Cement Co. v Fidelity & Cas. Co., 91 AD2d 412, affd 63 NY2d 798; Westchester Resco Co. v New England Reinsurance Corp., 818 F2d 2; Vargas v Insurance Co., 651 F2d 838; American Home Prods. Corp. v Liberty Mut. Ins. Co., 565 F Supp 1485, mod 748 F2d 760; Ethicon, Inc. v Aetna Cas. & Sur. Co., 737 F Supp 1320.)
DECISION OF THE COURT
Liberty Mutual contends that the $3 payment made by each rider for each trip constitutes the use of the van "to carry persons for a fee”, a use for which liability is excluded by the terms of its policy of insurance.
The policy of insurance issued to Norma Crummey for the van in question herein does not, however, exclude coverage for liability which arises by virture of the use of the vehicle in a "share-the-expense” car pool. One definition of a "share-the-expense” car pool describes a situation wherein a number of travelers agree to calculate documented travel expenses to a mathematical certainty, and then apportion those expenses according to an agreed upon formula. This is not, however, the only reasonable interpretation of the term. Pursuant to the rules of construction applicable herein whereby the court is charged with liberally construing ambiguous terms in favor of the insured, a "share-the-expense” car pool may encompass many varieties of less formal car pool arrangements. The court finds that a fair and reasonable definition of the term "share-the-expense” car pool extends to the situation herein, wherein Mrs. Crummey traveled to work on a daily basis and transported a small group of approximately eight regular riders, friends and nonfriends, over a period of time, charging them a sufficient amount to cover the expenses incurred for gas, tolls, insurance and other expenses incident to their use of the van. Mrs. Crummey did not solicit the general public as *1016 passengers on her van, and her uncontroverted testimony indicated that her use of the van was not a profit-making or motivated enterprise. While there was no proof at the trial that the $3 paid by each rider accurately reflected a fair apportionment of actual travel expenses, there was no proof to the contrary.
The court finds that the use of the van in question on September 28, 1989, constituted a share-the-expense car pool. The disclaimer of insurance coverage by Liberty Mutual was, therefore, invalid. The petition by Aetna Casualty and Surety Company for an order permanently staying arbitration is granted.