**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,**
Plaintiff,

v.

**Louis I. GONZALES, Rosa Janeski, Pauline Setmajer, James E. Warot, Jordanka Sotiroski, and Kenneth W. Lewis,**
Defendants.

**No. 2:93 cv 185 JM.**

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 27, 1995.

Mark E. Schmidtke, Valparaiso, IN, for plaintiff.

A. James Sarkisian, Allen and Sarkisian, Theresa L. Springmann, Spangler, Jennings and Dougherty, Merrillville, IN, for defendants.

### MEMORANDUM DECISION AND ORDER FOR ENTRY OF JUDGMENT

MOODY, District Judge.

In this action plaintiff General Accident Insurance Company (hereinafter, "GAIC") seeks a judgment declaring that provisions of a personal auto insurance policy issued to defendant Louis I. Gonzales exclude coverage for an accident that occurred December 8, 1992, because Gonzales was carrying persons "for a fee." Three cross-motions for summary judgment are pending, one filed by GAIC, one jointly by defendants Gonzales and Janeski, and one jointly by defendants Setmajer and Warot. Defendant Sotiroski has neither responded to GAIC's motion nor joined in other defendants' motions. Because the arguments made by the parties apply equally to all, for simplicity the discussion that follows will refer to "defendants" collectively.[1]

The "lay" facts[2] are undisputed in this diversity case. The application of unambiguous[3] policy language to undisputed facts is a question of law particularly appropriate for summary judgment. *Selleck v. Westfield Ins. Co.*, 617 N.E.2d 968, 970 (Ind.Ct.App. 1993). A clear and unambiguous exclusion in an insurance contract must be given its plain meaning. *Allstate Ins. Co. v. Boles*, 587 F.Supp. 807, 809–810 (S.D.Ind.1984); *Vernon Fire & Casualty Ins. Co. v. American Underwriters, Inc.*, 171 Ind.App. 309, 356 N.E.2d 693 (1976). Under the circumstances of the present case, the court concludes that the exclusion applies and summary judgment must be granted to GAIC.

Gonzales purchased a personal automobile policy from GAIC to insure his 1990 GMC mini-van. On December 8, 1992, Gonzales, on his way home from work, was involved in an accident with defendant Lewis. Lewis, who was uninsured, caused the collision by crossing the center line. He later pleaded guilty to operating a motor vehicle while intoxicated causing serious bodily injury, an Indiana Class D felony. Gonzales and his co-defendants, the riders in his van at the time of the accident, have each made (or could make) claims under either the liability or uninsured motorist coverages provided by the policy issued by GAIC to Gonzales.

While four were with him on the day of the accident, Gonzales had six regular riders.[4] Gonzales and his riders worked at the same company, and all rode to-and-from work together each day in Gonzales' van, an approximately eighty-mile round trip. Gonzales picked up and dropped off the riders at one location near his home, a store parking lot. The riders each paid Gonzales $5.00 a day for each day that they rode. The charge did not vary: on days when some did not go to work, the riders who did still paid only $5.00, and the missing riders did not make up the difference later. When Gonzales was not available (sick, vacation, etc.) the riders found their own alternative method of transportation to work.

When deposed, Gonzales explained the following. His weekly cost for gas was about $40.00. Other than that, he never calculated the actual cost of the trip, for example, including an amount for maintenance and de-

---

1. The court does not include defendant Lewis, as he has been defaulted for failing to appear and answer.

2. For a definition of "lay" facts, see *Central States Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1373–74 (7th Cir.1992).

3. Defendants contend that the exclusion at issue in this case is ambiguous. As explained in this memorandum decision, the court disagrees. Even if ambiguous, however, that raises an issue for the factfinder only when extrinsic evidence must be used to determine the facts upon which the contract rests. *Delaplane v. Francis*, 636 N.E.2d 169, 171 (Ind.Ct.App.1994) (*citing Kordick v. Merchants Nat'l Bank & Trust Co.*, 496 N.E.2d 119, 125 (Ind.Ct.App.1986)). That is not the case here, where defendants simply want the alleged ambiguity interpreted in their favor. As will be explained in the text, doing so makes no difference.

4. There is some ambiguity in the deposition testimony as to the number of regular riders but the point is not material to the court's decision.

preciation. He chose $5.00/day as the amount to charge because that was the same amount he had paid to someone else he used to ride with. His riders had to pay him $5.00: he did not consider it to be a voluntary contribution. With the exception of Warot, who was somewhat equivocal on the point, the other riders when deposed explained that Gonzales required them to pay $5.00 a day to ride with him. None of them knew the amount of Gonzales' expenses for making the trip.

The GAIC personal auto policy issued to Gonzales contained the following exclusionary provisions. At p. 2:

A. We [GAIC] do not provide Liability Coverage for any person:

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. This exclusion (A.5.) does not apply to a share-the-expense car pool.

At p. 3 of endorsement A–7769 10.88:

A. We [GAIC] do not provide Uninsured/Underinsured Motorists Coverage for "bodily injury" or "property damage" sustained by any person:

3. While "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (A.3.) does not apply to a share-the-expense car pool.

GAIC contends that Gonzales was using his van to carry persons "for a fee" at the time of the accident, so Gonzales has no liability coverage for the accident and neither he nor his passengers are entitled to uninsured motorist's coverage. The defendants contend that their arrangement for traveling to work together was a "share-the-expense car pool," and so they are within the policy's coverage(s).

The court does not share GAIC's confidence that "controlling precedent" requires the result it seeks. GAIC asserts that the "Court is bound to apply the law of the State of Indiana, as set forth in *Martin v. Rivera* [,

545 N.E.2d 32, 34 (1989) ] . . .". While *Martin* is certainly helpful, providing an Indiana court's analysis and application of a policy exclusion similar to those in issue here, it is not "controlling precedent" because based on Illinois, not Indiana, law. *Martin*, 545 N.E.2d at 33 ("[Appellant argues that] ambiguity arises from the fact that the Illinois legislature has enacted statutes . . . . Illinois case law is scarce on interpretation of this exclusionary clause.")

In *Martin*, the insured, Robinson, lived in Illinois and worked at a nursing home in Northbrook, Illinois. He purchased insurance on a van which he kept garaged in Gary, Indiana. The policy excluded coverage[5] for bodily injury to passengers carried "for hire," an exclusion the court recognized as having the same purpose and effect as "for a fee." *Martin*, 545 N.E.2d at 33. An acquaintance of Robinson, Barbare, who was not an employee of the nursing home, would drive the van transporting nursing home employees from Gary to Northbrook, and back, every day. Occasionally, two trips were made. On days when Barbare could not drive, he obtained a substitute driver. The number of passengers on a trip varied from four to as many as fifteen, but the same flat fee of $5.00 per round trip was always charged.

A simple way to describe the arrangement in *Martin* is to say that Robinson was in the business of providing bus service from Gary to Northbrook. While the *Martin* court recognized that the "passengers carried for hire" exclusion was not meant to work a forfeiture of the policy for car pooling, the court not surprisingly found that the exclusion applied:

As a matter of law, a van which was not used by the owner, who lived in Illinois, but instead was given to a non-employee in Gary, Indiana for the purpose of providing transportation for a set fee to various numbers of employees of [the nursing home] who wanted transportation to and from work and who made as many trips as necessary to provide the transportation

5. The exclusions at issue in *Martin* were under the policy's liability and medical payments coverages, not liability and uninsured motorists coverages in the present case. The distinction is not significant.

does not come within the coverage provided by the insurance policy at issue here. *Martin,* 545 N.E.2d at 34.

While *Martin* is not "controlling" precedent, it also is not confined to interpretation of Illinois law. Using an Alabama case,[6] *Martin* provides a general discussion of the factors that distinguish a non-covered "for hire" arrangement, excluded in some manner from the coverage of virtually every personal auto policy, from a non-excluded car pool. Because there is no reason to believe that Indiana courts applying Indiana law would consider *Martin* irrelevant, it provides persuasive authority entitled to deference from this court. *Cf. Kutsugeras v. Avco Corp.,* 973 F.2d 1341, 1346 (7th Cir.1992).

The factors considered in *Martin* were 1) whether a flat fee was charged; 2) whether the fee was proportionate to the actual expenses of the trip; 3) whether payment of the fee was voluntary, and; 4) whether the driver and passengers were "engaged in a common enterprise" (e.g., friends or relatives on a pleasure trip) other than simply reaching a common destination. *Martin,* 545 N.E.2d at 34. GAIC argues that, just as in *Martin,* defendant Gonzales charged a flat, non-voluntary fee not proportionate to the actual expenses of the trip, and that Gonzales and his passengers had no common interest other than reaching the same destination. The court agrees with GAIC's application of the first three factors to the present case. The court disagrees with GAIC's analysis and application of the fourth factor, the existence of a "common enterprise," however.

Most car pools, and certainly the most common form thereof, co-employees commuting to work, are engaged in the "common enterprise" of reaching the same destination. And, as GAIC's policy exempts "share-the-expense car pool[s]" from the "for a fee" exclusion, the common goal of reaching the same destination is not by itself a sign that the arrangement is not a car pool, despite *Martin*'s suggestion otherwise. *Martin,* 545 N.E.2d at 34. *Martin* held, however, that passengers in a "van not used by the owner

... [but instead by] **a non-employee ... for the purpose of providing transportation** for a set fee" were not in a car pool. *Martin,* 545 N.E.2d at 34 (emphasis added). This holding convinces the court that *Martin* should be read to mean that co-employees sharing the expense of commuting to their workplace together are "engaged in a common enterprise." *Id.*

This reading of *Martin* makes some sense[7] of GAIC's exemption for "share-the-expense" car pools, and leaves only the ultimate question, whether Gonzales was carrying passengers for a fee or participating in a "share-the-expense car pool." After considering defendants' attempts to distinguish *Martin* and argue in favor of the court finding the arrangement was a car pool, the court can only conclude that Gonzales was carrying his passengers for a fee and the exclusion applies.

Oversimplifying in the interest of brevity, defendants argue that the phrase "share-the-expense car pool" is ambiguous because it is unclear whether expenses must be calculated and apportioned with exactitude (and recalculated every time a rider is absent), or approximated. Thus, interpretation of the phrase in defendants' favor is required, allowing an arrangement where expenses are approximated. According to defendants, using $.27 a mile as the operating cost of Gonzales' van (the amount currently allowed by IRS regulation), the $5.00/day fee was "close enough" to find that defendants were sharing the expense of the trip and in a car pool.

Defendants analogize their situation to, and ask the court to follow, *Aetna Casualty and Surety Co. v. Mevorah,* 149 Misc.2d 1011, 566 N.Y.S.2d 842 (N.Y.Sup.Ct.1991). In *Mevorah,* the insured used her van to transport a number of friend and "nonfriend" co-workers to their office. The riders paid a flat fee of $3.00 per trip ($6.00 per round trip). After a while, the insured's husband, who was not a co-worker, began doing the driving. He made four trips a day, picking up riders at two different locations. The

---

6. *Johnson v. Allstate Ins. Co.,* 505 So.2d 362 (Ala.1987).

7. But see n. 8 at p. 467, *infra.*

insured testified that she made "no profit" from the trips. *Mevorah,* 566 N.Y.S.2d at 843.

As in the present case, the insurance policy in *Mevorah* excluded coverage when passengers were being carried for a fee unless the arrangement was a "share-the-expense" car pool. The New York court found "share-the-expense" ambiguous, reasoning that while it could mean a situation where passengers "agree to calculate documented travel expenses to a mathematical certainty," it could also "encompass many variations of less formal car pool arrangements." *Mevorah,* 566 N.Y.S.2d at 845. The court found the arrangement under consideration to be a "share-the-expense" car pool because the insured charged a sufficient amount to cover expenses with no motive to earn a profit. "While there was no proof at trial that the $3.00 paid by each rider accurately reflected a fair apportionment of actual travel expenses, there was no proof to the contrary." *Id.*

■ The court does not agree with *Mevorah's* conclusion that the term "share-the-expense car pool" is ambiguous, rather, the court believes that the plain meaning of the term includes situations where expenses are shared by approximation, not just those where they are calculated to the penny. Thus, the court agrees with what it believes to be the essence of defendants' argument, that where parties attempt to share expenses of commuting to work they are in a car pool within the meaning of GAIC's policy. However, the operative portion of the preceding statement is that at least some attempt be made to fairly apportion expenses [8], a point on which *Mevorah* contains no analysis, and on which defendants' analysis is unconvincing.

■ The precise efforts necessary to fairly apportion expenses need not be defined in the present case, because Gonzales' own testimony is that he made no attempt whatsoever to calculate and apportion his expenses. Neither did his passengers believe that expenses were being equally apportioned. They all testified that they had no idea what Gonzales' expenses were, but thought $5.00 a fair amount because cheaper than they could drive themselves and the same as the cost of riding a commuter bus. Moreover, unlike the situation in *Mevorah,* the uncontroverted proof in the present case shows that the $5.00 fee charged by Gonzales was not a fair apportionment, not "close enough," as defendants argue.[9]

**8.** Defendants argue that a holding for GAIC would in essence adopt GAIC's definition of "share-the-expense" and effectively bar from coverage any car pool arrangement where money changes hands, because it is unlikely that any car pool's math would be precise enough. The court believes that exaggerates GAIC's position. Even if not, because there is no evidence of an expense-sharing arrangement in the present case, the court need not attempt to define the degree of exactitude necessary. To do so would be an overly broad holding, probably *dicta.*

The court offers a broad observation, however. GAIC insists in its brief that by carrying passengers for a fee, Gonzalez dramatically increased the risk of claims, making the purpose for the exclusion obvious. The court fails to understand GAIC's logic.

A "car pool" ordinarily means that the participants in the pool take turns driving their own cars: for example, in a four-person pool, each participant would drive one week of the month. In this arrangement expenses are equally shared without money ever changing hands. Moreover, the insured risk presumably increases marginally (and perhaps even decreases) because the insured does not drive three quarters of the time.

Thus, exempting this type of car pool from the "for a fee" exclusion makes sense.

By prefacing the term "car pool" with the modifier "share-the-expense," however, "car pool" includes situations (which it might otherwise not) where one person drives all the time and expenses are apportioned among the participants. The court fails to see why riders paying a fee, but who, as in the present case, view the arrangement a car pool, not a transportation business run by their co-employer/driver, are more likely to make claims than riders paying a fair share. Unless GAIC has loss statistics that prove otherwise, its exemption of "share-the-expense" car pools from the "for a fee" exclusion seems to make little sense.

It is this court's job, however, to apply the plain language of the parties' insurance contract to the facts, not to substitute its business judgment for the parties' re-writing their contract accordingly.

**9.** Even if it were, this after-the-fact rationale would be a fortuitous result rather than an indication that Gonzalez and his passengers intended to equally share expenses, thereby participating in the "common enterprise" of a car pool.

Defendants argue that the eighty-mile trip, at $.27 a mile, cost $21.60 to make. Thus, on the day of the accident when four passengers were present, each would have paid $5.00 while Gonzales' "share" would have been $1.60.[10] Defendants ask rhetorically, "Is this not close enough for this court to hold as a matter of law that the defendants 'shared' the 'expense' of the 'car pool' on the day of the accident?"

Even indulging the premise that a fee that fortuitously, rather than by design, approximates actual expenses is evidence of a shared-expense car pool, the answer is no. Defendants' math reveals that Gonzales' riders each paid slightly more than 23% of the cost of the trip, while he paid only a little more than 7% of the cost. This does not come at all close to sharing the expense of commuting to work. As a result, the court concludes that Gonzales and his passengers were not in a "share-the-expense car pool." Instead, Gonzales was carrying persons for a fee, an activity unambiguously excluded by the policy from coverage. The defendants' motions for summary judgment are **DE-NIED.** GAIC's motion for summary judgment is **GRANTED,** and it is entitled to the declaratory judgment it seeks.[11]

The clerk is **ORDERED TO ENTER FINAL JUDGMENT** as follows:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that judgment is entered in favor of plaintiff General Accident Insurance Company and against defendants Louis I. Gonzales, Rosa Janeski, Pauline Setmajer, James E. Warot, Jordanka Sotiroski and Kenneth Lewis, and it is hereby declared that under policy number RPA 37–894–93, issued by plaintiff General Accident Insurance Company to defendant Louis I. Gonzales providing insurance for the term October 30, 1992 to

> April 30, 1993, neither the liability nor uninsured/underinsured motorist coverages apply to any claims asserted or that may be asserted by the named defendants arising from a motor vehicle accident occurring between defendants Gonzales and Lewis on December 8, 1992.

**SO ORDERED.**

---

10. On days when six passengers were present, which it appears was usually the case, Gonzalez of course rode for free and pocketed $8.40. This is further evidence that the arrangement was not a "share-the-expense" car pool.

11. Inexplicably, GAIC's motion (as do defendants' motions, as well as their responses to GAIC's) addresses only the uninsured/underinsured motorist coverage of the policy, while its complaint seeks declaratory relief as to the liability provision as well. On the undisputed facts, it

appears defendant Lewis was solely responsible for causing the accident: Gonzalez would have no liability. Thus, the defendants' failure to raise this issue in response to GAIC's motion should be viewed as an admission that their liability coverage is no longer an issue. In any event, the court's holding with respect to the uninsured/underinsured motorist exclusion would be dispositive as to both, so summary judgment is appropriate.