**MERIDIAN MUTUAL INSURANCE COMPANY, Appellant–Defendant,**

**v.**

**AUTO–OWNERS INSURANCE COMPANY, Appellee–Plaintiff,**

**and**

**Benjamin C. Markham, Individually and as Administrator of the Estate of Sheila A. Markham, et al. Appellees–Defendants.**

No. 14A01–9502–CV–41.

Court of Appeals of Indiana.

Dec. 20, 1995.

Transfer Granted May 22, 1996.

Stephen J. Peters, Richard P. Winegardner, Stewart & Irwin, Indianapolis, Gerald Allega, Statham Johnson & McCray, Evansville, of counsel, for Appellant.

Vincent S. Taylor, Taylor, Densford and Bauer, Bloomington, Betsy K. Greene, Nunn, Kelley & Greene, Bloomington, William H. Andrews, Angela F. Parker, Andrews, Harrell, Mann, Chapman & Coyne, Bloomington, William C. Lloyd, Ferguson, Ferguson & Lloyd, Bloomington, Gary J. Clendening, Sally A. Enoch, Mallor Clendening Grodner & Bohrer, Bloomington, for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Meridian Mutual Insurance Company ("Meridian") appeals from the entry of summary judgment in favor of Catherine Yoder, Marjorie H. Chestnut, Elizabeth Craig and their spouses, Benjamin C. Markham, individually and as administrator of the Estate of Sheila A. Markham, Auto–Owners Insurance Company, and United Farm Bureau Mutual Insurance Company (collectively "Auto–Owners"). This is an interpleader and declaratory judgment action arising from an accident between an automobile driven by Sheila Markham and a van driven, but not owned, by Larry Ramsey, Meridian's insured. At the time of the accident, Ramsey, Yoder, Chestnut, and Craig were traveling in the van owned by Gail Riggins. Meridian and Auto–Owners filed cross-motions for summary judgment on the issue of whether Meridian's policy provided excess coverage above the primary coverage on the van. The trial court granted Auto–Owners' motion and determined that coverage was not foreclosed under the Meridian policy, which excluded bodily injury claims resulting from the "use of a vehicle when used to carry persons or property for a fee" but which excepted from this exclusion "[s]hared-expense car pools." We reverse.

### ISSUE

The sole issue for review is whether the Meridian policy provides excess liability coverage on the van driven by Ramsey or whether the carrying for a fee exclusion applies.

### FACTS

Gail Riggins regularly drove her van to commute between her home in Odon and her place of employment with Thomson Consumer Electronics in Bloomington. As many as eleven fellow employees would ride with her every working day for the 84–mile round trip. Each passenger paid Riggins $17.00 per week to ride in the van. When Riggins was unable to drive the group to work, she would ask a passenger to substitute and drive the van for her. When a substitute drove the van, his $17.00 payment was reduced by $5.00 for each day that he drove.

On February 18, 1992, Riggins made arrangements for Ramsey to drive the van. Ramsey and eight fellow employees were traveling on State Road 45 in Greene County when the van collided with an oncoming automobile driven by Sheila Markham. Ramsey and Markham died from injuries they sustained in the collision. All eight passengers in the van on that day were also injured. There were no passengers in Markham's vehicle.

The private passenger automobile policy that Meridian issued to Ramsey provided for excess liability coverage but contained an exclusion from coverage when the vehicle was "used to carry persons or property for a fee." "Shared-expense car pools" were excepted from the exclusion. The policy did not define these terms.

### DISCUSSION AND DECISION

#### Standard of Review

When reviewing a trial court's ruling on a motion for summary judgment this court performs the same inquiry as the trial

court. *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.* (1993), Ind.App., 634 N.E.2d 1336, 1337. Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). Cross motions for summary judgment do not modify the standard for granting summary judgment. *Fifth Third Bank of Southeastern Ind. v. Bentonville Farm Supply, Inc.* (1994), Ind.App., 629 N.E.2d 1246, 1248, *trans. denied.*

■ Summary judgment concerning the construction of an insurance contract is the conclusion, as a matter of law, that the contract is unambiguous and that it is unnecessary to employ the rules of contract construction in order to determine its meaning. *Selleck v. Westfield Ins. Co.* (1993), Ind.App., 617 N.E.2d 968, 970, *trans. denied.* Unambiguous policies must be enforced according to the plain meaning of the terms, including terms that limit the insurer's liability. *Pennington v. American Family Ins. Group* (1993), Ind.App., 626 N.E.2d 461, 464. Mere disagreement as to the meaning of an insurance contract or the fact that the term is not defined does not establish ambiguity. *Harden v. Monroe Guar. Ins. Co.* (1993), Ind. App., 626 N.E.2d 814, 817, *trans. denied.* Ambiguity exists in an insurance contract if "it is susceptible to more than one interpretation and reasonably intelligent [persons] would honestly differ as to its meaning." *Anderson v. State Farm Mut. Auto. Ins. Co.* (1984), Ind.App., 471 N.E.2d 1170, 1172.

■ Where both parties have asserted in the trial court that there are no questions of material fact and the only remaining question is one of insurance contract construction, resolution of the construction question is a judicial function. *B & R Farm Services, Inc. v. Farm Bureau Mut. Ins. Co.* (1985), Ind., 483 N.E.2d 1076, 1077–78. Here, the parties agree that there are no genuine issues of material fact concerning the commuting arrangement using the Riggins van. The parties advance various rules of construction which apply to the interpretation of insurance contracts. Auto–Owners maintains that the contract should be construed in a light

most favorable to the insured. Meridian contends that because the dispute before this court is not between the two parties to the contract, we must determine the general intent of the agreement from a neutral stance. *See Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.* (1973), 260 Ind. 32, 291 N.E.2d 897, 899.

■ We determine that the exclusion is unambiguous and should be given its plain and ordinary meaning. *Tate v. Secura Ins.* (1982), Ind., 587 N.E.2d 665, 668. Therefore, it is unnecessary to invoke other rules of insurance contract construction. *See Selleck,* 617 N.E.2d at 970. The only issue for review is the application of the insurance contract terms to the undisputed facts.

### Meridian's Excess Liability Coverage

■ Under Indiana Code § 27–8–9–7 a vehicle owner's insurance coverage is considered primary when the vehicle is used by a permittee within the scope of the permission granted. Here, Meridian's potential coverage is secondary to the coverage afforded by Riggins' Auto Owners policy on the van. The claims against the Meridian policy are excess liability claims arising from the accident. *See* IND.CODE § 27–8–9–7(c).

Meridian's private passenger automobile policy issued to Ramsey provides in pertinent part:

This coverage does not apply to:

1. Bodily injury or property damage arising out of the ownership, maintenance or use of a vehicle when used to carry persons or property for a fee. This exclusion does not apply to:

  a. Shared-expense car pools; . . . .

Record at 47. Meridian contends that the trial court erred when it entered summary judgment in favor of Auto–Owners because the commuting arrangement constituted carrying persons for a fee and was not a shared-expense car pool. Thus, Meridian asserts that it had no duty to defend or indemnify under its policy. We agree.

### The Carrying For A Fee Exclusion

■ The carrying for a fee exclusion is a general exclusion intended to limit liability coverage for the risks associated with vehicles used to carry paying passengers for a set fee, risks not typically covered by private passenger automobile insurance policies. *See Johnson v. Allstate Ins. Co.* (1987), Ala., 505 So.2d 362, 367. The rationale for the exclusion is that the use of a vehicle to carry passengers for hire places a much greater liability on the operator than would exist if the vehicle were employed exclusively for personal use or pleasure. *See* 6C *Appleman, Insurance Law & Practice* § 4433, at 412 (1979). This exclusion has not previously been construed under Indiana law. However, this court applied Illinois law and interpreted similar insurance contract language in *Martin v. Rivera* (1989), Ind.App., 545 N.E.2d 32, *trans. denied.* In *Martin*, a van was used to transport employees to and from a nursing home. Each passenger was charged $5.00 per round trip, payable approximately every two weeks. The insurer denied coverage based on an exclusion for "bodily injury to any passenger or passengers carried for hire." *Id.* at 33. This exclusionary clause was equated to similar phrases typically found in insurance policies (carrying for consideration, for fee, for charge) which have been held to be "plain, unambiguous, and reasonable." *Id.* (citing *Laliberte v. Public Service Mut. Casualty Co.* (1943), 69 R.I. 431, 34 A.2d 670; *Orcutt v. Erie Indem. Co.* (1934), 114 Pa.Super. 493, 174 A. 625); *see also* 6C *Appleman, Insurance Law & Practice* § 4433, at 409. We find this reasoning persuasive.

■ In considering the carrying for a fee exclusion, we apply the four factors enumerated by the Alabama Supreme Court in *Johnson* and followed by this court in *Martin.*[1] The *Johnson* and *Martin* courts addressed: (1) whether the amount charged is a definite amount; (2) whether it was proportionate to the actual expenses of the trip; (3) whether payment of the amount was voluntary or was paid as consideration to the driver; and (4) whether the driver and passengers were engaged in a common enterprise. *Johnson*, 505 So.2d at 367; *Martin*, 545 N.E.2d at 34. Carrying for a fee is evident where the amount is definite, not proportionate to actual expenses, involuntarily paid, and the driver and passengers are not engaged in a common enterprise. *Martin*, 545 N.E.2d at 34.

### Applying the Factors

■ When applied in the present case, the factors set forth in *Johnson* and *Martin* demonstrate that Riggins was carrying persons for a fee. First, as Auto–Owners concedes, the $17.00 Riggins charged was a definite amount. Riggins relaxed this weekly fee only when someone else drove the van. Fixed fees were found both in *Johnson*, where parents who wanted daily pick-up service transporting children to and from a day care center signed a form and were charged $1.00 each way, and in *Martin*, where a $5.00 fee was charged to bus passengers traveling to and from their place of employment. *Johnson*, 505 So.2d at 363; *Martin*, 545 N.E.2d at 33. This factor supports a finding that Riggins was carrying persons for a fee.

Second, the amount Riggins charged was not in proportion to the actual expenses of the trip. Although Riggins contends that she used the fees collected to defray expenses of operating the van, Riggins made no attempt to determine her actual costs. Initially, she simply adopted the amount that had been charged by the previous driver. Riggins continued to charge that amount over a substantial period of time regardless of her actual expenses.[2] While Riggins in-

---

1. The United States District Court for the Northern District of Indiana, citing *Martin*, recently applied the four factors under Indiana law. *General Accident Ins. Co. of America v. Gonzales* (N.D.Ind.1995), 877 F.Supp. 463 (*on appeal* No. 95–1787, 7th Cir., oral argument heard Sept. 28, 1995). The court in *Gonzales* faced the same exclusion and similar circumstances as in the instant case. The vehicle owner/driver carried several passengers, all of whom worked for the same employer and commuted 80 miles together. Also, the passengers paid an amount not based upon a share of the expenses, but based upon a previous owner/driver's charge. *Id.* at 464–65. The District Court found that the owner was carrying persons for a fee. *Id.* at 466.

2. The record is unclear regarding the total number of years Riggins drove the van. Auto–Own-

creased the charge once when she purchased a new van, she had no knowledge of her actual costs and therefore could not have fairly apportioned those costs among her passengers. Without any evidence of the cost to operate the van, it cannot be said that Riggins calculated the charge in relation to her actual expenses.

As evidence of apportionment, Auto–Owners offers the fact that passengers paid the $17.00 even when they did not ride. A requirement that the passengers pay the fee when not commuting may have assured that Riggins would be compensated for her expenses, but that does not mean the expenses were ever apportioned. As noted in *Johnson*, "[t]he actual use to which the amount collected by the driver was put, whether to defray expenses or otherwise, is not relevant ... Nor is it important whether the driver makes a profit on the journey." *Johnson*, 505 So.2d at 367; *see also Martin*, 545 N.E.2d at 34. Riggins made absolutely no attempt to determine or apportion the actual costs of the commute. The record shows that the $17.00 was an arbitrarily set fee. This lack of proportionality also indicates that Riggins was carrying persons for a fee.

The third factor is whether the fee was voluntary. Auto–Owners argues that payment was voluntary because the passengers chose to continue participating in the commuting arrangement over an extended period of time. Auto–Owners misinterprets this factor. The question is not whether participation was voluntary, but whether the fee was paid voluntarily or was paid as consideration to the driver. *Johnson*, 505 So.2d at 367. Here, if the participants wished to ride, they were required to pay $17.00. This comports with a finding of involuntariness. *See Martin*, 545 N.E.2d at 34 (fact that van owner charged $5.00 payable approximately every two weeks indicated that "fee was not voluntary but required"). The passengers did not voluntarily pay the $17.00 fee.

Finally, we consider whether the participants engaged in a common enterprise. In *Johnson* and *Martin*, the drivers and passen-

gers had no common interest other than reaching a common destination. *Johnson*, 505 So.2d at 367; *Martin*, 545 N.E.2d at 34. Here, Riggins, Ramsey and the other passengers all worked for Thomson Consumer Electronics. They shared not only a common destination, but a common employer. We conclude that these commuters did share a common enterprise. *Accord, Johnson*, 505 So.2d at 365–66 (citing *United States Fidelity & Guar. Co. v. Hearn* (1936), 233 Ala. 31, 170 So. 59, 61) (common enterprise found when some passengers contributed a car and personal services and others contributed to expenses of trip). However, the common enterprise factor is the least probative of the four factors in that the existence of a common enterprise is not inconsistent with a carrying for a fee arrangement. The weight of the factors indicates the nature of the arrangement. The common enterprise component must yield where, as here, the other three factors demonstrate that the vehicle was being used to carry persons for a fee.

The use of a vehicle to shuttle passengers to and from the same destination on a daily basis for a fixed fee or charge falls within the exclusion. Riggins charged a fee which was definite, arbitrary and involuntary. This was not a casual use but a regular, ongoing use of the vehicle to transport passengers for consideration under what was, in effect, a contractual arrangement. We conclude that the van was carrying persons for a fee when the accident occurred, an activity excluded from coverage under the Meridian policy.

**The Shared–Expense Car Pool Exception**

Auto–Owners contends that the commuter arrangement was a "shared-expense car pool" within the exception to the carrying for a fee exclusion. The typical "car pool" is an arrangement whereby drivers and vehicles are rotated without an exchange of money. *See Johnson*, 505 So.2d at 364–65. As in *Johnson* and *Martin*, in this case there was no rotation among different vehicles owned by people in the Riggins group. Rather, the Riggins van was used exclusively, even when Riggins herself was not riding.

ers admits that the commuter enterprise "contin-

ued for well over a decade." Brief of Appellee at 20.

This does not meet the ordinary definition of a "car pool."

However, the critical feature of the phrase under consideration is that the term "car pools" is modified by the term "shared-expense." The plain meaning of "shared-expense car pool" is a ride sharing arrangement where the expenses are actually shared on a ratable basis.[3] The *Johnson* court considered the same phrase and declined to apply the shared-expense car pool exception to a continuous travel arrangement where fees were not directly related to the costs of the trips. The court observed that other courts which have interpreted policies with clauses that exclude from coverage vehicles used to carry passengers for a fee have recognized that this limitation on coverage does not apply "to car pool situations *where the amount collected by the driver is proportionate to the expense of the journey." Id.* at 367 (emphasis added).

The dissent construes the term "shared-expense car pools" in isolation when it contends that there is nothing in the policy to suggest that the expenses must be proportionally allocated among the passengers. The plain meaning of "shared-expense" is to apportion or allocate known expenses. *See id.* Without a requirement that actual expenses be shared on a ratable basis, the "shared expense" car pool exception would swallow the exclusion and render it meaningless.

An insurance contract must be construed as a whole. *Stevens v. St. Paul Fire & Marine Ins. Co.* (1981), Ind.App., 422 N.E.2d 319, 321, *trans. denied.* All provisions in a contract are to be given effect. *George S. May Int'l Co. v. King* (1994), Ind.App., 629 N.E.2d 257, 261, *trans. denied.* In interpreting a contract we must harmonize all the various parts so that no provision conflicts with, is repugnant to, or neutralizes any other provision. *Id.*

For the "shared expense" car pool exception to serve its purpose within the policy, the passengers must not merely con-

tribute but must contribute in proportion to the expenses actually incurred. Absent a proportionate allocation of expenses among the passengers, the owner is merely carrying passengers for a fee. Here, there is no evidence of expenses and, hence, no correlation between expenses and the amount paid by the passengers. There is no factual basis in the record to support a conclusion that the expenses were actually shared. The most that can be said is that the fee collected was simply used to defray the expenses of operating the van. That is not enough to invoke the exception. *See Johnson,* 505 So.2d at 367.

A "shared-expense car pool" does not embrace circumstances where, as here, Riggins operated a regular commuter service for many years and required that each passenger pay a definite sum that was assessed without reference to her actual expenses. The Meridian policy did not underwrite coverage for this type of risk.

### Conclusion

We hold that Riggins was carrying persons for a fee and that the arrangement falls within the Meridian policy exclusion from coverage. Moreover, the enterprise is not excepted as a shared-expense car pool. The plain language of the Meridian policy precludes excess liability coverage for bodily injuries sustained in the collision. This is the only result consistent with the coverage afforded under Ramsey's private passenger automobile policy. The trial court is directed to vacate the summary judgment in favor of Auto–Owners, enter summary judgment in favor of Meridian, and conduct further proceedings consistent with this opinion.

Reversed and remanded.

BAKER, J., concurs.

RILEY, J., dissents with opinion.

RILEY, Judge, dissenting.

I respectfully dissent. As a matter of law, the trial court correctly determined that the "carrying for a fee" exclusion did not apply

---

**3.** We recognize that the apportionment of expenses will rarely be exact. Shared-expense car pools are likely to be informal arrangements meant to decrease the difficulties of travel without imposing significant accounting burdens on any individual.

when the policy expressly covered a "shared-expense car pool." Larry Ramsey was participating in a "shared-expense car pool" and was not "carrying passengers for a fee." The term in the instant case, "shared-expense car pool," is undefined and should be interpreted according to the plain meaning of the terms and the intent of the contracting parties. *See, Peterson v. Universal Fire and Casualty Insurance* (1991), Ind.App., 572 N.E.2d 1309, 1311. The plain meaning of "shared expense car pool" is simply that the passengers contribute to the expense of sharing transportation to their place of employment. There is nothing in the policy to suggest that they must proportionally allocate the expenses.

An insurer bears the burden of denying coverage through a policy exclusion. An insurer may limit liability only if the exclusion is plainly expressed in the insurance contract. *Asbury v. Indiana Union Mutual Ins. Co.* (1982), Ind.App., 441 N.E.2d 232, 236. (An insurance contract should not be interpreted to remove from coverage a risk against which an insured intended to protect himself or herself).

It is true that *Martin v. Rivera* (1989), Ind.App., 545 N.E.2d 32, addresses the issue of "carrying for a fee" definition and the court uses four factors to decide what that term means. However, the insurance policy in the *Martin* case had no provision exempting a "shared-expense car pool" from the "carrying for a fee" exclusion. The *Martin* case does not define a "shared-expense car pool" and we can easily distinguish the facts in *Martin* from the facts before us. The driver in *Martin* was in the business of providing bus service to paying passengers on a daily basis. The vehicle made trips as necessary to provide transportation to interested payers and the driver did not work with any of the passengers he carried. The driver in this case, Larry Ramsey, did not solicit the public for passengers and the van was not used for profit or for a commercial purpose. The passengers were engaged in a common enterprise because they had the same destination and a common employer. *See General Accident Insurance Company v. Gonzales* (N.D.Ind.1995), 877 F.Supp. 463.

I would affirm the decision of the trial court and enter summary judgment in favor of the appellees.